**Sherman W. MONROE, Jr., Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–275.

United States Court of Veterans Appeals.

April 13, 1993.

James W. Deremo (non-attorney representative) was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

NEBEKER, Chief Judge:

This appeal presents for review a December 11, 1991, Board of Veterans' Appeals (Board) decision which, inter alia, denied service connection for a heart disability. The Board decision is vacated and the matter is remanded.

## I.

Appellant entered the service in September 1951 during the Korean conflict. Shortly after basic training, a physical examination revealed a "severe and very loud" heart murmur; he was diagnosed with "a septal defect, ventricular—moderately severe." R. at 2. Although the medical board recommended separation, he was put on limited duty and later discharged in August 1953. R. at 2–8. In 1989, he applied for service connection for his heart murmur. R. at 20. He submitted evidence in the form of medical reports showing a current heart condition, and a medical treatise on heart murmurs. R. at 10–16, 26–27. The Regional Office (RO) denied service connection, relying on appellant's service medical records (SMRs) which noted that his ventricular septal defect preexisted service. R. at 29.

Appellant subsequently submitted letters from Merle W. Marshall, and Robert Johnson, former administrators at Huron College where he was a member of the basketball and football teams from 1950–51, and from Ralph J. Lundun, his coach at Huron. Their letters reveal that appellant was very active in both sports and was given several physical examinations by the Tschetter and Hohm Clinic of Huron; each examination found him physically fit to compete. R. at 31–32. He also submitted his own statement that he underwent four physical evaluations in high school, three college physicals, and one physical prior to entering the military, all indicating a normal heart. R. at 34–35. Last, he submitted a letter from Dr. Theodore Hohm of the Tschetter and Hohm Clinic, who wrote: "A heart exam was always routine. We always had good well trained physicians. It doesn't seem possible to me that not one of our doctors would miss a heart murmur if it was there." R. at 39. An October 17, 1990, RO decision, which is not of record, confirmed and continued the prior denial of service connection. R. at 43. Appellant appealed to the Board, which also denied his claim.

## II.

Sections 1110 and 1131 of title 38, United States Code Annotated (West 1991), afford compensation payment for injury or disease contracted in the line of duty, or for inservice aggravation of a preexisting injury or disease. However, 38 C.F.R. § 3.303(c) (1992) excludes congenital defects from such consideration: "congenital or developmental defects, ... are not diseases or injuries within the meaning of applicable legislation." The General Counsel for the Department of Veterans Affairs (VA), in a precedent opinion binding on the VA under 38 C.F.R. §§ 2.6(e)(9), 14.507, and 19.5, addressed the apparent contradiction between the above statutes and regulation. The opinion reasons that the term "disease" in 38 U.S.C.A. §§ 1110 and 1131 and the term "defect" in 38 C.F.R. § 3.303(c) are mutually exclusive, and concludes that service connection may be granted for diseases, but not defects, of a congenital, developmental, or familial origin. *VA Gen. Couns. Prec. 82–90* (July 18, 1990) (origi-

nally issued as *VA Gen. Couns. Prec. 1–85* (Mar. 5, 1985)).

The opinion advised that when a disease is of a congenital nature, VA adjudicators are justified in finding that such disease preexisted service, but that in cases where the disease is first manifest in service,

> guidance from medical authorities may be necessary regarding the actual time of inception. Typically in these cases, entitlement to service connection should turn on the question of whether manifestations of the disease in service constituted "aggravation" of the condition. That question must be resolved by applying the same stringent legal standards which are applicable in cases involving acquired disabilities.

*Id.*

Accordingly, the primary issue here is whether, despite its name, appellant's ventricular septal defect is a disease or a defect. The Board apparently found his condition to be a disease:

> The findings during service of ventricular septal defect signified congenital heart *disease:* "The commonest form of congenital heart disease is an isolated ventricular septal defect." 1, *Cecil Textbook of Medicine,* § 49 at 306 (18th ed., 1988). In other words, the veteran displayed an "uncured" congenital heart *disease* during service which, by definition, must have clearly preexisted service.

*Sherman W. Monroe, Jr.,* BVA 91–40201, at 6 (Dec. 11, 1991) (underscoring in original; emphasis added). Once the Board made such a determination, its next step was to consider whether the disease had its inception in service.

Here, the Board considered whether appellant's condition preexisted service, and concluded that his condition was congenital and, therefore, preexisted service. The Board's statement of reasons or bases for this conclusion, however, was inadequate. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). Every veteran is presumed to have been in sound condition when enrolled in service, with the exception of disorders noted at induction "or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service." 38 U.S.C.A. § 1111 (West 1991). In concluding that appellant's condition preexisted service, the Board, as noted above, wrote that the veteran displayed an "uncured" congenital heart "disease" during service which, by definition, must have preexisted service. The Board, however, referred to no evidentiary basis for this conclusion, *see Colvin v. Derwinski,* 1 Vet. App. 171 (1991), and, accordingly, failed to point to clear and unmistakable evidence to rebut the presumption of sound condition.

The Board next turned its attention to whether appellant's condition was aggravated in service. It wrote:

> The only indication in service of the preexisting congenital heart defect was the harsh systolic murmur. This apparently was clinically evident after basic training, so soon following service that it indicated nothing more than the presence of the congenital ventricular septal defect. In other words, there is no indication that the congenital heart defect underwent any pathological increase during Korean Conflict service simply on the basis of a loud and harsh systolic murmur.

*Monroe,* BVA 91–40201, at 7.

Section 3.306(a) and (b) of title 38, Code of Federal Regulations, provides that when a preexisting injury or disease undergoes an increase during wartime service, it will be presumed to have been aggravated in service. This presumption of aggravation can only be rebutted through submission of clear and unmistakable evidence. 38 C.F.R. § 3.306(a), (b) (1992). The evidence is clear that appellant's disability increased during service. Although an induction examination is not of record, the SMRs and affidavits concerning appellant's preservice physical condition reveal that his ventricular septal defect was not apparent before service and was first diagnosed after basic training. Accordingly, appellant's condition is presumed aggravated, unless clear and unmistakable evidence exists to the contrary.

The Board pointed to no such evidence. Furthermore, the Board neither referred to nor relied on the precedential opinion of the VA General Counsel cited above. The case must be remanded, then, for the Board to consider whether clear and unmistakable evidence exists in the record to rebut the presumptions of sound condition and aggravation, and to provide an adequate statement of reasons or bases for its conclusions.

Accordingly, the Secretary's motion for summary affirmance is denied, the Board's decision is VACATED, and the case is REMANDED for readjudication consistent with this opinion.