Citation Nr: 1710368 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 04-292 268 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to service connection for left knee disability. 

2. Entitlement to service connection for right knee disability, to include as secondary to left knee disability. 

3. Entitlement to service connection for left hip disability, to include as secondary to left knee disability. 


REPRESENTATION

Appellant represented by: Virginia A Girard-Brady, Attorney at Law


ATTORNEY FOR THE BOARD

J. Nelson, Associate Counsel

INTRODUCTION

The Veteran served in the United States Navy on active duty from June 1951 to June 1955. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2004 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York. The January 2004 rating decision denied the Veteran's claims for service connection for right and left knee conditions. In May 2004, the Veteran filed a notice of disagreement (NOD) only in regards to a left knee condition. A Statement of the Case (SOC) was issued in July 2004, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in August 2004.

In an August 2007 decision, the Board denied service connection for the claimed left knee disability. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In September 2008, the Court granted a Joint Motion filed by representatives of both parties, vacating the Board's August 2007 decision, and remanding the matter to the Board for further proceedings consistent with the Joint Motion. 

In February 2009, the Board remanded the Veteran's claim to the RO for further action, to include additional development of the evidence. After completing the requested development, the RO continued to deny the claim for a left knee disability (as reflected in May 2010 and April 2011 supplemental SOCs (SSOCs)), and returned the matter to the Board for further appellate consideration. 

The present appeal to the Board also arose from a May 2010 rating decision in which the RO denied service connection for right knee and left hip disabilities, each claimed as secondary to a left knee disability. In June 2010, the Veteran filed an NOD. An SOC was issued in August 2010, and the Veteran filed a substantive appeal in September 2010. The RO continued to deny the claims (as reflected in an April 2011 SSOC).
In November 2012, the Acting Chairman of the Board, upon his own motion, advanced this appeal on the Board's docket, pursuant to 38 U.S.C.A. § 7107 (a)(2) (West 2014) and 38 C.F.R. § 20.900 (c) (2014).

In a December 2012 decision, the Board denied the issues on appeal. The Veteran again appealed the Board's decision to the Court. In July 2014, the Court in a single-judge disposition Memorandum Decision affirmed the Board's denial. However, the Veteran through his representative filed a motion for reconsideration. Subsequently, in September 2014, the Court issued another Memorandum Decision, vacating the Board's decision with respect to these issues and remanding the matters for further development consistent with the Court's decision. 

In May 2015 the Board remanded the issues on appeal for further development consistent with the Court's July 2014 decision. After completing the requested development, the RO continued to deny the claim for a left knee disability reflected in its September 2016 SSOC and returned the matter to the Board for further appellate consideration.

As a final preliminary matter, the Board notes that, in addition to the paper claims file, the Veteran also has paperless, electronic Virtual VA and Veterans Benefits Management System (VBMS) files. The Veteran's VBMS record includes the Court Memorandum Decisions and associated documents. However, a review of the documents in Virtual VA reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issues on appeal.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate each claim herein decided have been accomplished. 

2. The Veteran's left multipartite (bipartite) patella is a congenital defect that was not subject to a superimposed disease or injury during military service. 

3. As service connection for a left knee disability has not been established, there is no legal basis for an award of service connection for right knee or left hip disabilities as secondary to a left knee disability. 


CONCLUSION OF LAW

1. The criteria for service connection for a left knee disability are not met. 38 U.S.C.A. §§ 1110, 1111, 1153, 5103, 5103A, 5107(b) (West 2002 & Sup. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.306, 3.307, 3.309 (2016).

2. The criteria for service connection for a right knee disability, to include as secondary to a left knee disability, are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.306, 3.307, 3.309, 3.310 (2016). 

3. The criteria for service connection for a right knee disability, to include as secondary to a left knee disability, are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2012)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2016).

Notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103 (a) and 38 C.F.R. § 3.159 (b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159 (b)(1).

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353 -23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159 (b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; Pelegrini, 18 Vet. App. at 112; see also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id. 

In this appeal, an April 2003 pre-rating RO letter provided notice to the Veteran regarding what information and evidence was needed to substantiate the claim for service connection for a left knee disability, as well as what information and evidence must be submitted by the appellant, and what information and evidence would be obtained by VA. A March 2009 post-rating letter provided the same information, requested any evidence in his possession that pertains to the claim, and provided the Veteran with information pertaining to the assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. After issuance of those letters, and opportunity for the Veteran to respond, the May 2010 and April 2011 SSOCs reflect readjudication of the claim for a left knee disability. Hence, the Veteran is not shown to be prejudiced by the timing of this notice. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as in an SOC or SSOC, is sufficient to cure a timing defect).

Pertinent to the claims for service connection for right knee and left hip disabilities, in a November 2009 pre-rating letter, the RO provided notice to the Veteran explaining what information and evidence was needed to substantiate the claims for service connection on a direct and secondary basis, what information and evidence must be submitted by the Veteran, and what information and evidence would be obtained by VA; the November 2009 letter also provided the Veteran with information pertaining to the assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations. The May 2010 rating decision reflects the initial adjudication of the claims after issuance of this letter. Hence, the November 2009 letter, which meets the content of notice requirements described in Dingess/Hartman and Pelegrini, also meet the VCAA's timing of notice requirement.

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the claims. Pertinent medical evidence associated with the claims file consists of service treatment and personnel records, VA treatment records, letters and operative reports from private physicians, and reports of VA examinations. Also of record and considered in connection with the appeal are various statements submitted by the Veteran, a fellow service member, his former representative, and his attorney on his behalf. The Board also finds that no additional RO action to further develop the record in connection with the claims for service connection is required. 

As requested by the Board in its February 2009 remand, the RO attempted to obtain April and May 1952 treatment records from the U.S. Naval Hospital in Newport or other evidence documenting the Veteran's account of falling and injuring his knees in service, and the RO notified the Veteran and his attorney of efforts made in this regard. The RO also arranged for the Veteran to undergo VA examination in May 2009. As neither the Veteran nor his attorney responded to the RO's March 2009 or June 2010 letters pertaining to treatment records from Drs. N. T. or S. C. (pertinent records that the Veteran had identified), no such records, nor any signed release to enable the RO to obtain those records on his behalf, was received. 

In its May 2015 remand, the Board instructed the RO to send to the Veteran a letter requesting that he provide sufficient information, and if necessary, authorization to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. The RO complied with the remand instructions by contacting the Veteran both in writing and by phone in March 2016. Except for a Statement in Support of Claim submitted by the Veteran's representative in February 2017, neither the Veteran nor his attorney has supplied any additional information to the RO following its March 2016 requests.
 
Hence, the Board's prior remand directives have been fulfilled, to the extent possible, and no further RO action in this regard is necessary. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

In summary, the duties imposed by the VCAA have been considered and satisfied. Through notice of the RO, the Veteran has been notified and made aware of the evidence needed to substantiate his claims, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claims. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matters herein decided, at this juncture. See Mayfield, 20 Vet. App. at 543 (rejecting the argument that the Board lacks authority to consider harmless error); see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

II. Background

The Veteran contends that he has a left knee disability as a result of a fall onto his knees from one deck to another during military service in April 1952. He also contends that his right knee and left hip disabilities are secondary to his claimed left knee disability.

Service treatment records reflect that on entrance examination in June 1951, the Veteran's extremities were assessed as normal. A record of treatment from the U.S.S. Stoddard in October 1951 notes that the Veteran had tenderness and slight swelling over the lateral collateral ligament of the left knee, with insidious onset. An x-ray revealed no bony abnormality except for a multipartite patella. 

An April 1952 treatment note from the U.S.S. Stoddard reflects the Veteran's report of having left knee pain for the past three or four years. The record documents that the Veteran was sent to the orthopedic clinic at the U.S. Naval Hospital for x-rays and consultation at the beginning of that month. X-ray results revealed tripartite patella. Clinical examination revealed traumatic synovitis with weakening of the quadriceps. The impression on orthopedic consultation was tripartite patella in itself not clinically significant, traumatic synovitis, and quadriceps atrophy. The diagnosis on the present examination on the U.S.S. Stoddard was traumatic, chronic left knee synovitis, and the Veteran was transferred to the Naval Hospital in Newport, Rhode Island for treatment. 

The record from the Naval Hospital pertaining to the Veteran's treatment in April and May 1952 reiterates the Veteran's reported history that he had had occasional pain in the left knee since childhood. He explained that it began to bother him in high school when he was active in sports, that he would occasionally feel the knee giving out, and that the knee had been getting worse for the past six to eight months precipitated by long walking or climbing ladders. He denied any history of trauma. Following an examination of the knees, the impression was chronic synovitis and questionable chondromalacia. The Veteran received progressive range exercise at the Naval Hospital in April and May 1952. He was found fit for duty and was discharged to duty in May 1952. 

A list of sick call treatment reflects that the Veteran received consultation for a bruised left knee in January 1953. Service treatment records are silent for complaints, findings, or reference to right knee or left hip problems. A June 1955 discharge examination report reflects normal lower extremities on clinical evaluation. 

Service personnel records confirm that the Veteran was transferred to the U.S. Naval Hospital in Newport for treatment in April 1952 and transferred back to the U.S.S. Stoddard in May 1952.

The Veteran presented to the Glens Falls VA Community Based Outpatient Clinic (CBOC) in December 2001 to establish care. He indicated that he was currently working as a chiropractor and exercised by walking and using a treadmill. On a review of symptoms, he reported intermittent bilateral knee pain, secondary to an injury during military service. On physical examination of the extremities, he had full range of motion and no tenderness. The assessment was osteoarthritis of the knees.

A statement from a former service comrade dated in December 2002 indicates that he was on the U.S.S. Stoddard when the Veteran fell from the 01 deck to the main deck and sustained a very bad injury to his knee in 1951 or 1952, and he transferred the Veteran's records to the Naval Hospital. The Veteran indicated in his May 2004 NOD that the fall described by his service comrade was the reason for his transfer to the Naval Hospital in April 1952. 

In a December 2002 letter, a private physician, N. T., M.D., stated that the Veteran had been his patient for over 18 years [since 1984], that he had treated the Veteran for severe degenerative joint disease and osteoarthritis in both knees, and that the Veteran had been referred to an orthopedist. The physician opined that the Veteran's orthopedic abnormalities had their origin while in military service on or about April or May 1952 with severe trauma to his knees, that he had no preexisting orthopedic problems, and that his symptoms had persisted and worsened since that date. 

A December 2002 letter from the above-mentioned private orthopedist, S. C., M.D., indicated that the Veteran had bilateral knee osteoarthritis. He indicated that the Veteran reported falling on the deck of the ship onto his knees in 1952 and being hospitalized for several weeks for this injury. The Veteran suspected that his present osteoarthritis was causally related to the injury he described. Dr. S. C. opined that it was possible that the reported fall may be causally related to the present osteoarthritis but that he had no way of proving the causality. 

In December 2003, a VA physician, after reviewing the Veteran's claims file, including his service treatment records, the two letters from private physicians, and the lay statement, opined that it did not seem as likely as not that the Veteran's present condition was related to his military service. 

In his May 2004 NOD, the Veteran asserted that even though there was a problem with his left knee in high school, the injury in service increased the left knee disability beyond what it would have been without the fall. He requested a VA examination to determine whether his knee disability was related to his "previous injuries to include [his] fall in service." In his August 2004 substantive appeal, he argued that the "tremendous fall" he had in service would certainly have had an impact on the condition of his left knee. He also suggested that the "eye witness" lay statement from his service comrade should be considered credible and substantiate [sic] his statements to his doctors on which their opinions were based.
Pursuant to the Joint Motion, the Board remanded the claim for a left knee disability in February 2009 to obtain treatment records dated in April and May 1952 from the U.S. Naval Hospital in Newport or other records such as morning reports, deck logs, and unit records from the U.S.S. Stoddard that may have documented the alleged fall. The RO updated the Veteran and his attorney through various letters of efforts taken to locate such records and notified them in letters dated in March 2011 and May 2012 of responses that the records were unavailable. 

In April 2009, the Veteran claimed that "severe damage" to his left knee led to right knee and right hip damage, which was "the usual in such case." He also stated that his right knee and left hip had been replaced. He reported that Drs. N. T. and S. C. had retired from practice, but his attorney had all the paperwork.

During a May 2009 VA joints examination, the Veteran stated that he was on the 01 deck of the U.S.S. Stoddard, flipped with the motion of the ship, and fell 15 to 20 feet landing on his knees, more on the left. He reported that he had severe pain, his knee was swollen, he thought the patella was projecting laterally, and he was given APCs [aspirin, phenacetin, and caffeine compound] and was returned to duty. He stated that the pain continued, he complained, and he was sent to the Newport Naval Hospital in April 1952. He indicated that after the hospitalization he was never able to extend or flex his knee fully; that he saw many chiropractors, who were also his friends; and that his right knee began to bother him about 15 years ago [1994], followed by arthroscopic right knee surgery in 2003. Later, he developed left hip problems and had a left hip replacement in July 2007.

Following a review of the claims file, physical examination, and x-rays of the knees, which revealed a left bipartite patella, the diagnosis was left knee degenerative arthritis and osteoarthritis of the right knee status post arthroscopic eburnation of the medial compartment and installation of prosthesis. The examiner opined that it was as least as likely as not that the left knee disability was caused by or a result of an in-service injury or event. As a rationale for his medical opinion, the examiner indicated that the Veteran provided persuasive history of continuing problems over the last 50 years of development of degenerative arthritis secondary to significant trauma acquired in a fall from heights aboard a ship. The examiner also opined that the right knee disability was not caused by or a result of in-service illness, injury, or event. The examiner reasoned that the service treatment records did not recognize significant injury to the right knee in any of the reports and hospitalization. Citing data from the Canadian Workplace Safety and Insurance Tribunal, the examiner also opined that it was unlikely that the right knee damage was the result of the injury to the left because of the absence of a serious limp due to and from the left knee.

In an April 2009 letter addressed to his attorney and received by the RO in July 2009, the Veteran, relying on his experience as a chiropractor, explained that it was not at all uncommon to have either knee or the other knee develop problems after an injury and osteoarthritis to the opposite knee due to getting off the painful part and putting more stress and strain on the opposites. He stated that in his practice he found it not uncommon for other joints to begin to wear due to added stress after the original joint becomes bad enough. He reported that his left knee caused the right knee, then his left hip, and finally his right hip to deteriorate. He added that it was a simple deduction of how nature or the body works; one thing leads to another, and "any doctor with an ounce of sense knows the drill."

In March 2010, the Veteran's attorney submitted additional private medical evidence in support of the Veteran's pending claims. The records from Dr. S. C. included a July 2003 operative report for right knee medial compartment osteoarthritis and a July 2007 operative report for left hip osteoarthritis. The attorney also submitted a December 2009 letter from Dr. N. T. He indicated that the Veteran had been a patient of his for 25 years [since 1984]. He stated that the Veteran's initial orthopedic complaints could be traced back to a well-documented knee injury as a result of a fall and that the Veteran had had progressive knee joint degeneration and symptomatic progression of pain and joint function deterioration. He reported that due to these problems, progressive deterioration of his other knee due to overuse, as well as his hip joints, had occurred.

The same physician who rendered the VA medical opinion in December 2003 provided additional medical opinions in March 2010 after outlining his review of the claims file. He noted that in an April 1952 service treatment record, the Veteran reported that long walks and climbing ladders made the left knee become painful and swollen. He observed that after discharge from the Naval Hospital in May 1952, no further reports of the left knee were entered in the medical record, and the Veteran separated from service three years later. The physician further noted a hiatus of medical information relative to the knees until approximately 1984 when the Veteran first began seeing Dr. N. T. After that, it was unclear to the VA physician what the course of the Veteran's knee condition took, particularly whether there were episodes of pain in the knee related to activity as had occurred in the Navy in 1951 and 1952. It was unclear to the VA physician how the disease progressed over the years, how the Veteran's gait was or was not affected, and what led to the right knee operation.

The VA physician further observed that service treatment records documented two episodes of exacerbations of a preexisting condition, a multipartite left patella and a diagnosis of synovitis, traumatic, chronic of the left knee, after which there were no documented recrudescences (recurrences of symptoms) in service or documented recrudescences after service similar to those in the service treatment records. The physician noted the May 2009 x-rays, which revealed a bipartite [left] patella and explained that it was known from the medical literature that multipartite patellae can result in inflammation and degenerative change. He remarked that it would be unusual that the putative unaffected right knee would degenerate more rapidly and lead to operation sooner than that of the primarily affected left knee.

The physician opined that the events of service in October 1951 and 1952 were episodic recrudescences of the preexisting condition and that military service neither permanently aggravated nor altered the natural history of the left knee condition. Supporting his opinion, the physician cited his above arguments and no subsequent documented exacerbations of the left knee pain after May 1952, indicating that one would have to say that a baseline of symptoms relative to the knee would be none. In reality, he added, the Veteran's bipartite patella placed him at risk for further recrudescence of symptoms, which by history were associated with activities and stressors on the knees. Finally, the physician also opined that as a corollary, subsequent conditions of the Veteran's right knee were not as likely as not secondarily related to the Veteran's left knee disability.

In an addendum also dated in March 2010, the physician indicated that he inadvertently left out the left hip. He clarified that as a corollary, subsequent conditions of the right knee and left hip were not as likely as not, which he indicated should have read as not "as least as likely" as not, secondarily related to the Veteran's left knee condition. He based his conclusion on the lack of documentation that the Veteran had a gait problem over the years subsequent to service. He also concluded that military service did not alter the natural history of degeneration of a multipartite patella knee condition that was developmental in the first place.

In a June 2010 letter to the Veteran and copied to his attorney, the RO acknowledged the Veteran's statement regarding the retirement of his two private physicians, but wanted to try to contact them in an effort to obtain medical records relevant to his appeal. The RO asked the Veteran to complete and return a separate VA Form 21-4142, Authorization and Consent to Release Information, for each doctor, and for any others who treated him for his claimed left knee disability, or to obtain and send those records to VA himself. Noting that he indicated that his attorney had the referenced medical records, the RO also asked the Veteran to provide a separate Authorization and Consent to Release Information for his attorney so that the RO could request those records from her. Neither the Veteran nor his attorney responded to the RO's request regarding the medical records from Drs. N. T. and S. C.

In correspondence received in May 2011 in response to the April 2011 SSOC, the Veteran's attorney argued that service connection for a left knee disability was warranted because there was medical evidence of a current disability, evidence of an in-service injury or incident, and a May 2009 VA medical nexus opinion linking the current disability to the Veteran's military service.

The Veteran's left knee, right knee secondary to left knee and left hip secondary to left knee claims were denied by the Board in December 2012. The Veteran again appealed the decision to the Court. The Court remanded the Board's December 2012 denial in a September 2014 decision. 

In compliance with the Court's September 2014 decision, the Board remanded the Veteran's claim to the RO for further development, including a medical opinion to determine whether or not the Veteran's bipartite patella was a congenital defect. Based upon the Board's May 2015 remand instructions, an addendum VA medical opinion was issued in March 2016 following a review of the Veteran's claims file. 

The reviewing physician found that the Veteran's multipartite (bipartite) patella represented a developmental defect. Citing the Duke University Wheeless Textbook of Orthopedics, bipartite patella is defined as a common congenital synchondrosis of the patella that is usually asymptomatic. He continued by stating, given that this condition is generally asymptomatic, it may be described as a normal variant. Therefore, the multipartite (bipartite) patella most accurately fits the definition of congenital defect as a structural or inherent abnormality or condition that is stationary in nature. He further ruled out bipartite patella as a disease, because it is generally asymptomatic. In conclusion, the reviewing physician found that the Veteran's multipartite (bipartite) patella was less likely as not subject to a superimposed injury or disease that resulted in the current left knee degenerative joint disease disability. 

This conclusion was based upon his study of the Veteran's claims file, which contained evidence that the Veteran had sustained a fall in 1951 or 1952. The corresponding left knee evaluation in October 1951 documented lateral ligament tenderness, which he found was not consistent with patella injury. A second left knee evaluation done six months later does not document an associated injury. Based on this review, he found that there was no evidence of a patella injury that would result in a degenerative arthritis disability or a superimposed disease. 

In regards to the Veteran's diagnosis of left knee osteoarthritis, the reviewing physician found that it clearly and unmistakably did not exist prior to service and is less likely as not that it had its onset in, or is otherwise related to service. His rationale was based upon the finding the October 1951 x-ray did not document joint degeneration and a lack of documented left knee complaints, evaluations or diagnoses over the approximately 40 years since the Veteran's service, which could prove a nexus between the Veteran's current left knee osteoarthritis diagnosis and service associated synovitis or ligament conditions. 

III. Analysis

Service connection may be established for disability resulting from personal injury or disease contracted in the line of duty, or for aggravation of a pre-existing injury suffered or disease contracted in line of duty. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Such a determination requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992). Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Service connection may be presumed, for certain chronic diseases, such as arthritis, which develop to a compensable degree within a prescribed period after discharge from service (one year for arthritis), although there is no evidence of such disease during the period of service. This presumption is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. While the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree. 38 C.F.R. § 3.307 (c). 

 A. Left Knee

At the outset, the Board notes that, while the Veteran's general service treatment records are available, service treatment records from his hospitalization for his left knee at the U.S. Naval Hospital from April to May 1952 are not available for review. The Board is aware that in such cases, VA has a heightened duty to explain its findings and conclusions and to consider carefully the benefit-of-the doubt rule. Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). The Board's analysis of the Veteran's claim for service connection for a left knee disability has been undertaken with these heightened duties in mind.

Every person employed in the active military, naval, or air service shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. See 38 U.S.C.A. §§ 1111, 1137; See VAOPGCPREC 3-2003 (July 16, 2003); Wagner v. Principi, 370 F. 3d 1089 (Fed. Cir. 2004).

Pertinent to the claim for a left knee disability, congenital or developmental defects are not diseases or injuries within the meaning of the applicable law and regulations for VA compensation purposes. 38 C.F.R. § 3.303 (c). While service connection may be granted, in limited circumstances, for disability due to aggravation of a constitutional or developmental abnormality by superimposed disease or injury (see VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993)), no competent, credible, and persuasive evidence establishes that such occurred in this case, warranting an award of service connection.

A defect is a structural or inherent abnormality or condition which is more or less stationary in nature. VAOPGCPREC 82-90. A disease may be defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. Id. Service connection may be granted for diseases of congenital, developmental, or familial origin, but not for defects, unless such defect was subject to superimposed disease or injury during military service. Id. Such a disease, by its very nature, pre-exists a claimant's military service, and typically, entitlement to service connection turns on the question of whether manifestations of the disease in service constituted "aggravation" of the condition. Id. 

Having reviewed the entire claims file, the Board finds that competent medical evidence of record documents that the Veteran's multipartite (bipartite) patella is a congenital defect that was not subject to a superimposed disease or injury during military service. As noted above, in-service x-ray studies dated in October 1951 and April 1952 and post-service x-ray studies documented left knee multipartite or tripartite patella, and the March 2016 VA physician concluded that the multipartite (bipartite) patella was a congenital defect that it was less likely as not subject to a superimposed injury or disease that resulted in the current left knee degenerative joint disease disability.

The March 2016 physician also found that the Veteran's left knee osteoarthritis clearly and unmistakably did not exist prior to service and is less likely as not that it had its onset in, or is otherwise related to service. 

The Board finds that the opinions of the March 2016 VA physician are persuasive and probative evidence against the claim for a left knee disability because they are based on a review of the claims file and supported by an articulated medical rationale that is consistent with the record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value to a medical opinion). In fact, based on a detailed review of the claims file, the March 2010 physician concluded that the events of service in October 1951 and 1952 were episodic recrudescences of the preexisting condition.

The Board has afforded greater probative weight to the March 2010 and March 2016 evaluations than the May 2009 examination, because they have consistently discussed the Veteran's multipartite (bipartite) patella and the Veteran's medical history in detail. Both evaluations discussed their review of the Veteran's October 1951 left knee examination. The March 2016 evaluation reported that the results of the October 1951 examination were not consistent with a patella injury and that the October 1951 x-ray does not document joint degeneration. In addition, the March 2010 evaluation based its findings on the fact that the October 1951 x-ray of the left knee revealed a multipartite patella. 

The May 2009 examination does not address the Veteran's October 1951 left knee examination and x-rays. Conversely, the examiner incorrectly stated that the only medical information referable to the Veteran's knees was a report to sick call in April 1952. 

Due to the more detailed and accurate discussion of the Veteran's medical history found in the March 2010 and 2016 medical reports, the Board has afforded them greater weight than the May 2009 examination. 

The Board also considered the Veteran and a service comrade's lay statements regarding the alleged "tremendous fall" in service that resulted in "severe damage" to his left knee and whether such an injury was superimposed on the congenital left knee defect. 

In October 1951, he reported an insidious onset of left knee symptoms, and in April 1952, he described having left knee pain for the past three or four years. Then, while admitted to the Naval Hospital, he again described a gradual onset of left knee pain since childhood with pain becoming worse for the past six to eight months that was precipitated by long walking or climbing ladders, he denied any history of trauma, and he did not report any recent trauma. 

The Board finds that these three statements regarding the onset and nature of his left knee symptoms are internally consistent. The Board also finds that these records are particularly relevant to the issue of whether the Veteran fell 15 or 20 feet onto his knees because he contemporaneously denied any history of trauma to at least one medical provider at the Naval Hospital and did not report any tremendous fall when he was seen in April 1952 on the U.S.S. Stoddard or when he was referred to the orthopedic clinic. Even when he was seen in January 1953, his complaint was identified as a bruised left knee. In summary, these service records document three separate, but internally consistent, accounts by the Veteran of his knee symptoms and their onset; however, none identifies severe damage to the left knee as a result of a traumatic fall.

The Board also finds that his claim of falling on his knees and suffering an injury that required hospitalization is contradicted by his service treatment records. The April 1952 record from the U.S.S. Stoddard reflects that he was sent to the orthopedic clinic for x-ray and consultation based on his report of pain in his left knee for the past three or four years. The same record also indicates that admission to the Naval Hospital was advised for the purpose of two weeks of intensive quadriceps exercise, consistent with the impression of quadriceps atrophy. Furthermore, the available treatment record from the Naval Hospital did not identify any bruising, fracture, or other trauma to the left knee on physical examination, and the treatment he received, progressive range exercise, was consistent with the advice rendered in treating his quadriceps atrophy. 

The Board thus concludes that none of these records documents evaluation or treatment for an acute injury; rather, they all reflect evaluation and treatment for left knee problems that the Veteran consistently reported to have started gradually beginning in childhood. Therefore, the Board finds it reasonable to infer that the Veteran was not hospitalized for a left knee injury as a result of falling 15 to 20 feet and landing on his knees. See Kahana v. Shinseki, 24 Vet. App. 428, 438-41 (2011) (Lance, J., concurring) (discussing the distinction between cases in which there is a complete absence of any evidence to corroborate or contradict the testimony, as opposed to cases in which there is evidence that is relevant either because it speaks directly to the issue or allows the Board, as factfinder, to draw a reasonable inference).

Regarding the December 2002 lay statement from the Veteran's comrade, the Board points out that the comrade only reported that he was aboard the ship when the Veteran fell, and he was the person who transferred the Veteran's records to the Naval Hospital. The comrade did not indicate that he actually witnessed the alleged fall.

The Board also considered the Veteran's assertion that his current left knee degenerative joint disease and osteoarthritis symptoms began in service due to a tremendous fall from 15 to 20 feet and continued to the present time. As noted above, his report of a fall is unsupported by his service treatment records, and his report of a severe left knee injury is contradicted by contemporaneous service treatment records. Moreover, in his May 2004 NOD, which he signed, certifying that his statements were true and correct to the best of his knowledge and belief, he asked for a VA examination to "determine whether my knee condition is related to my previous injuries to include my fall in service." (Emphasis added). In other words, the Veteran has admitted to having at least two injuries. Because the Veteran has identified since 2002 only one fall in service and because the Board does not find the Veteran's report of an in-service fall resulting in severe left knee injury to be credible, the Board must conclude, and the Veteran's statement suggests, that he has incurred at least one post-service injury to his left knee. 

In view of the above, the Board finds that the Veteran's statements in regard to having had a tremendous fall in service that caused a severe left knee injury with left knee symptoms since service are not credible. His post-service assertions, which he made roughly 47 years or more after service separation, are inconsistent with the contemporaneous history provided at the time that he received treatment for left knee problems during service. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir.1996) (table) (In assessing credibility, the Board may consider interest, bias, inconsistent statements, bad character, internal inconsistencies, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness). Therefore, his statements have no probative value.

Moreover, the lack of any competent or credible evidence of the alleged fall and severe left knee injury in service, or of left knee symptoms during service that have continued to the present day preponderates against awarding service connection on the basis of chronicity and continuity of symptomatology. See 38 C.F.R. § 3.303(b).

On the question of whether the Veteran's claimed left knee disability is medically related to military service, the Board has also considered the various medical opinions by private and VA physicians. It is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993).

Unfortunately, the favorable medical opinions from Dr. N. T. in December 2002 and December 2009, from Dr. S. C. in December 2002, from the May 2009 VA examiner are based on the history provided by the Veteran, whom the Board does not find to be a credible historian as outlined above. The Court has held on a number of occasions that a medical opinion premised on an unsubstantiated account of a claimant is of no probative value. See, e.g., Swann v. Brown, 5 Vet. App. 229, 233 (1993) (generally observing that a medical opinion premised upon an unsubstantiated account is of no probative value, and does not serve to verify the occurrences described); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant that have been previously rejected). As a result, the Board does not find these medical opinions to be persuasive. Rather, they hold little, if any, probative value.

Acknowledging the Veteran's training and professional experience as a chiropractor, the Board also carefully considered his statements relating his claimed left knee disability to the alleged fall during military service. In Black v. Brown, 10 Vet. App. 279, 284 (1997), the Court held that a nurse's statement may constitute competent medical evidence where the nurse has specialized knowledge regarding the area of medicine or participated in treatment. However, the Board has found that the Veteran is not a credible historian and his statements have no probative value because his post-service assertions regarding a tremendous fall and severe left knee injury are unsupported and contradicted by his available service treatment records, which include a description of the treatment he received at the Naval Hospital between April and May 1952.

By comparison, the Board finds the March 2010 and March 2016 VA examiners' opinions-to the effect that a preexisting bipartite patella condition was not permanently aggravated or altered during service because the October 1951 and 1952 events represented episodic recrudescences-the most probative medical opinion on this point. In so finding, the Board notes that these examination reports reflect a thorough review of the claims file and a specific rationale for this opinion, showing consideration of the Veteran's history, which documents two episodes of exacerbations (in October 1951 and April 1952) of a preexisting condition with no further documented recrudescences in the following three years of military service. 

The VA physicians further observed that the service records pertaining to the Veteran's left knee did not identify a discrete injury as described by the Veteran, his service comrade, and his two private physicians. In addition, the VA physicians concluded that it was unclear what course the Veteran's left knee took because there remained a hiatus of medical information relative to the knees from discharge in 1955 until about 1984 when he began seeing Dr. N. T. The rationales underlying the opinions are reasonable and consistent with the evidence of record. As the Board finds the opinions of the March 2010 and 2016 VA physicians are entitled to greater probative weight than other medical opinions of record, it follows that the most persuasive medical opinion evidence on the medical nexus question weighs against the claim. 

As a final point, the Board notes its consideration of whether service connection for left knee osteoarthritis is warranted on a presumptive basis. However, even assuming that the Veteran had arthritis in his left knee when Dr. N. T. began treating him in 1984, there is no objective medical evidence of left knee osteoarthritis for at least 28 years after separation from service-well beyond the 1 year period post discharge during which service connection for arthritis, as a chronic disease, may be presumed. See 38 C.F.R. §§ 3.307. 3.309. The Board also points out that the passage of many years between discharge from active service and the medical documentation of a claimed disability (i.e., at least 28 years in this case) is a factor that tends to weigh against a claim for service connection. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000); Shaw v. Principi, 3 Vet. App. 365 (1992). 


 B. Right Knee and Left Hip

In addition to establishing service connection on direct basis or presumptive bases, service connection may be granted for disability that is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310. That regulation permits service connection not only for disability caused by service-connected disability, but for the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See also Allen v. Brown, 7 Vet. App. 439, 448 (1995). The Board notes that, effective October 10, 2006, VA amended 38 C.F.R. § 3.310 with regard to the requirements for establishing secondary service connection on an aggravation basis. See 71 Fed. Reg. 52,744-47 (Sept. 7, 2006). However, given the basis of the denial, as noted below, any further discussion of the amendment is unnecessary. 

After a full review of the record, including the medical evidence and statements made by the Veteran as well on his behalf, the Board finds that the claims for service connection for right knee and left hip disabilities must be denied on a direct basis, on a presumptive basis, and as secondary to the claimed left knee disability, which is not service-connected.

Service treatment records are silent for complaints, findings, or reference to right knee and left hip problems. 

Even assuming that the Veteran had degenerative joint disease and osteoarthritis in his right knee when Dr. N. T. began treating him in 1984, the first post-service medical evidence of a right knee disability was at least 28 years after separation from service. Similarly, the surgical report dated in July 2007 from Dr. S. C. is the first post-service medical evidence of a left hip disability. Absent competent evidence indicating right knee or left hip osteoarthritis within one year of the Veteran's separation from service, the Board finds that service connection may not be awarded for these disabilities on a presumptive basis as a chronic disability defined in 38 C.F.R. § 3.309 (a). Moreover, as post-service medical evidence does not document right knee or left hip problems for many years after discharge from service and the service treatment records do not reflect right knee or left hip problems, the preponderance of the evidence weighs against awarding service connection on the basis of chronicity and continuity of symptomatology. See 38 C.F.R. § 3.303 (b). Thus, in order to establish service connection, there must be some competent evidence establishing that right knee and left hip disabilities were incurred during service. See 38 C.F.R. § 3.303 (d).

As discussed above pertinent to the claimed left knee disability, the Board finds that the December 2002 private medical opinions from Drs. N. T. and S. C. are entitled to little, if any, probative value with respect to the right knee disability. Dr. N. T. opined that the Veteran's orthopedic abnormalities had their origin around April or May 1952 with severe trauma to his knees and that his symptoms had persisted and worsened since then. Dr. S. C. related that the Veteran fell on the deck of the ship onto his knees and was hospitalized for several weeks with this injury. However, these statements are unsupported and contradicted by contemporaneous service treatment records, which document no right knee complaints and reflect hospitalization in 1952 only for the left knee.

The Board considered the May 2009 VA examiner's opinion that a right knee disability was not caused by or a result of service and finds it to be the most probative medical opinion. Here, the examiner reasoned that a right knee disability was not related to service because the medical record from service did not recognize significant injury to the right knee in any of the reports. The Board finds that the rationale underlying this opinion is reasonable and consistent with the evidence of record. Specifically, the Board emphasizes that contemporaneous service treatment records exist and document left knee complaints, evaluation, and hospital treatment in April and May 1952; however, those records do not document the alleged fall or any right knee complaints or treatment. 

With regard to the left hip disability, the Veteran does not contend, and the evidence does not reflect that a left hip disability was incurred in or is otherwise medically related to military service. There is no competent evidence or opinion even suggesting that there exists a medical nexus between left hip osteoarthritis and any incident of service. None of the medical evidence of record reflects any such opinion(s) or even comments to that effect, and neither the Veteran nor his attorney has presented or identified any such existing medical evidence or opinion.

To the extent that the Veteran contends that service connection for his right knee and left hip disabilities is warranted as secondary to a claimed left knee disability, as the Board herein denies service connection for a left knee disability, there is no legal basis for granting service connection for these disabilities as secondary to a left knee disability. Where, as here, service connection for the primary disability has been denied, the Veteran cannot establish entitlement to service connection, pursuant to 38 C.F.R. § 3.310 (a), for a secondary condition. Thus, the matters of service connection for right knee and left hip disabilities as secondary to a left knee disability are without legal merit. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

 C. Conclusion

For all the foregoing reasons, the Board finds that the criteria for service connection for left knee, right knee, and left hip disabilities are not met, and that, accordingly, each claim on appeal must be denied. In reaching the conclusion to deny these claims the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990)

(CONTINUED ON NEXT PAGE)

ORDER

Service connection for a left knee disability is denied.

Service connection for a right knee disability is denied.

Service connection for a left hip disability is denied.


____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs