Citation Nr: 1736737 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 13-17 742 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for a right wrist disability. 

2. Entitlement to service connection for back disability. 


ORDER

Service connection for a right wrist disability is granted. 

Service connection for a back disability is denied. 


FINDINGS OF FACT

1. Resolving all doubt in the Veteran's favor, the Veteran's current right wrist disability had clinical onset during and as a result of military service. 

2. The Veteran's scoliosis is a congenital defect and an additional disability was not superimposed on the Veteran's scoliosis during service. 

3. The Veteran's degenerative disc disease, a possible complication of scoliosis, did not have clinical onset during or within one year of service and was not caused during or due to military service. 


CONCLUSION OF LAW

1. The criteria for service connection for a right wrist disability are met. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016).

2. The criteria for service connection for a back disability are not met. 38 U.S.C.A. §§ 1101, 1110, 1112; 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 4.9 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1993 to January 1997 with additional Reserve service. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from September 2011 and May 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

The claim was remanded by the Board in April 2015 and November 2016. 

1. Service Connection for a Right Wrist Disability

The Veteran contends that he incurred a right wrist disability during service. 

To prevail on a direct service connection claim, there must be competent evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 U.S.C. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2016).

The question before the Board is whether the Veteran's current right wrist disabilities, which include chronic sprain, right wrist dorsal syndrome, and DeQuervain's Syndrome, are etiologically related to his in-service right wrist treatment. 

Service treatment records document that the Veteran was first treated for a right wrist sprain of the extensor carpi ulnaris. In October 1996, after his right wrist pain continued, he was diagnosed with tendonitis. This diagnosis was confirmed in November 1996 treatment. Upon separation examination and report of medical history in November 1996, right wrist tendonitis was noted and the Veteran indicated positive responses for swollen and painful joints in addition. 

The Veteran filed the current claim for service connection in April 2011, in which he reported a right wrist disability that began in 1996. He also submitted a buddy statement in which T.P. said the Veteran has had wrist pain since they met in 1996. 

During a May 2011 VA examination, the Veteran was diagnosed with right wrist dorsal syndrome, but the examiner stated that an etiology opinion could not be provided without resort to speculation. 

An August 2015 VA examiner, who diagnosed DeQuervain's Syndrome, stated that he could not state with 50 percent certainty whether the Veteran's right wrist disability was etiologically related service. However, that examiner did not discuss the service treatment records and, as noted in the Board's November 2016 remand, there is a question as to whether service treatment records were provided to and reviewed by the examiner. 

Finally, in December 2016, a VA examiner noted a current diagnosis of chronic sprain and that it was first diagnosed in 1996. Limited and painful motion was also found. The examiner provided a negative etiology opinion, however, a rationale was not provided. 

Based on the forgoing, the Board finds that the evidence is at least in equipoise and that service connection for a right wrist disability is warranted. The Veteran had multiple instances of treatment for right wrist sprain and tendonitis during service and is currently diagnosed with chronic right wrist sprain since 1996. The VA opinions in this case are insufficient to weigh against the Veteran's competent and credible reports that his current right wrist symptoms began during service and have continued since. 

As such, service connection for a right wrist disability is granted. 

2. Service Connection for a Back Disability

The Veteran contends that his current back disability was incurred during or as a result of service. In his April 2011 claim, he specifically asserted that he incurred his back disability while loading trucks during service. 

Service treatment records document that the Veteran was noted to have scoliosis upon enlistment examination in December 1992. He denied recurrent back pain at that time. Service treatment records are negative for any complaints, treatment, or diagnosis of a back disability. The Veteran's back was found to be normal other than scoliosis at a November 1996 separation examination and he specifically denied recurrent back pain in the report of medical history completed at that time. In addition, he specifically denied recurrent back pain or swollen and painful joints in January 2001 and a back disability or symptoms were not found or reported on physicals completed during his Reserve service in June 2002, May 2003, November 2003, and November 2004. 

The Board notes that in a November 2010 statement, the T.P. asserted that the Veteran has had back pain ever since they met in 1996. Then, in a June 2013 statement, the Veteran reported that he received treatment for his back during service and upon separation examination. Nevertheless, service treatment records during and for many years post-service are negative of any complaints, treatment, or diagnosis of a back disability or pain. 

In fact, the first evidence from the Veteran of his back disability is his April 2011 claim for VA benefits.

Upon VA examination in August 2015, the Veteran complained of constant back pain but denied a specific injury during service. Based on the lack of a specific injury, diagnosis, or treatment during service, the examiner concluded that the Veteran is not service-connected for his back. 

The December 2016 VA examination and opinion were obtained pursuant to the Board's November 2016 remand order to address the issue of scoliosis. In addition to scoliosis, the VA examiner diagnosed degenerative disc disease based upon an X-ray which found mild degenerative disc space narrowing, although the scoliosis limited interpretation of the distal intervertebral disc spaces. The examiner provided the opinion that the Veteran's current back disabilities are not at least as likely as not incurred in or caused by military service. The examiner explained that scoliosis is a congenital or developmental defect and that there was no additional disability due to a disease or injury superimposed upon such defect during service. The examiner explained that the Veteran had no specific injury or treatment during service for an additional disability. The examiner further stated that the mild degenerative disc disease found on X-ray is a "possible complication" of scoliosis, but is not etiologically related to service. 

The Board notes that congenital or developmental defects are not considered "diseases or injuries" within the meaning of applicable legislation and, hence, do not constitute disabilities for VA compensation purposes. See 38 C.F.R. §§ 3.303 (c), 4.9 (2016); O'Bryan v. McDonald, 771 F.3d 1376, 1380 (Fed. Cir. 2014); Quirin v. Shinseki, 22 Vet. App. 390, 395 (2009). However, the sole fact that a disorder is congenital or hereditary in origin does not preclude service connection. See O'Bryan, 771 F.3d at 1380; Quirin, 22 Vet. App. at 395; VAOGC 8-88 (Sept. 1988), reissued as VAOPGCPREC 67-90 (July 18, 1990) (noting that diseases of hereditary origin can be incurred or aggravated in service if their symptomatology did not manifest itself until after entry on duty). 

Only congenital "defects," as opposed to congenital "diseases," are excluded from the types of disabilities that may be service connected, as congenital defects are not considered diseases or injuries under VA law. O'Bryan, 771 F.3d at 1380; VAOPGCPREC 82-90 (July 1990) (holding that "service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin"). Congenital defects are by definition static in nature. O'Bryan, 771 F.3d at 1380 (observing that a hereditary condition that cannot change is a "defect" and is not subject to the presumption of soundness under 38 U.S.C. § 1111); VAOPGCPREC 67-90 ("congenital or developmental defects are normally static conditions which are incapable of improvement or deterioration"). By contrast, congenital diseases are progressive in nature, and as such are capable of improvement or deterioration. O'Bryan, 771 F.3d at 1380 ("[A] congenital or developmental condition that is progressive in nature-that can worsen over time-is a disease rather than a defect," even if it ceases to progress); VAOPGCPREC 67-90 ("A disease . . . even one which is hereditary in origin, is usually capable of improvement or deterioration"). 

Thus, the litmus test for distinguishing a congenital defect from a congenital disease is whether the disorder in question is capable of changing. See Id. If the disorder may improve or deteriorate, then it is not a congenital defect, and consequently is eligible for service connection notwithstanding its congenital or hereditary nature. Id. 

If the congenital condition is a "defect" (i.e., a structural or inherent abnormality which is more or less static in nature), the presumption of soundness does not apply and service connection must be denied unless the evidence establishes that a disability due to disease or injury that was incurred in service is superimposed on the congenital defect. If, on the other hand, the congenital condition is a "disease" (i.e., a condition capable of improving or deteriorating), then the Board must determine whether the presumption of soundness applies. See 38 C.F.R. § 3.303 (c); see also Quirin v. Shinseki, 22 Vet. App. 390, 396-97 (2009); Terry v. Principi, 340 F.3d 1378, 1385-86 (Fed. Cir. 2003); Winn v. Brown, 8 Vet. App. 510, 516 (1996); Monroe v. Brown, 4 Vet. App. 513 (1993); VAOPGCPREC 82-90.

In this case, the 2016 VA examiner stated that the Veteran's scoliosis is a congenital defect, which is further supported by the evidence of record demonstrating that the disability has not progressed or worsened throughout the Veteran's military service and thereafter. The Veteran's scoliosis, which he admits has been present since he was a teenager, was asymptomatic upon enlistment, throughout military service, upon separation examination, and for many years thereafter. Reserve records more than seven years post-discharge do not demonstrate any back-related symptoms nor any disability in addition to or superimposed on scoliosis. The first evidence of back-related disability is the Veteran's claim for VA benefits, filed more than 14 years post-discharge from active duty service. 

In addition, the evidence does not demonstrate that a disability was superimposed on the scoliosis during or as a result of service. Again, there is no evidence of any back symptoms, treatment, or diagnosis during service or for more than a decade thereafter. The Veteran has denied any specific back injury during service and has only suggested that he may have incurred a back disability as a result of heavy during service. The 2015 and 2016 VA examiners each found that a current back disability was not incurred during or as a result of military service. 

The current degenerative disc disease was first demonstrated in 2016, 19 years post-discharge. As such, presumptive service connection is not warranted. 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309. Moreover, the 2016 VA examiner found that while the Veteran's degenerative disc disease may be a complication of scoliosis, it was not incurred during or as a result of military service. 

While the Board acknowledges the Veteran's contention that there may be a connection between his military service and the incurrence of a back disability, he is not competent to render such an opinion. To diagnose a specific disability and opine as to the etiology of such symptoms requires medical expertise, which he has not been shown to possess. See Jandreau v. Shinseki, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). While he is competent to report symptoms such as pain and when they began to VA or to others, such as T.P., the fact that his back was found to be within normal limits all throughout his service and for many years thereafter and that he did not complain of or seek treatment for his back for over a decade post-service weighs significantly against his claim. Moreover, back pain, in and of itself is not a disability for VA compensation purposes. A specific disability must be shown, which, in this case, did not happen until many years post-service. 

The Veteran has not submitted competent and credible evidence that a back disability was incurred during or as a result of service, that his scoliosis is a disease and not a defect, or that a disability was superimposed upon that defect as a result of service. In fact, the only competent and credible evidence of record is the opinion of the VA examiners, which is against the claim. 

Based on the foregoing, the Board finds that the evidence of record does not support a finding of service connection for a back disability. Accordingly, the Board must conclude that the preponderance of the evidence is against the claim, and it is, therefore, denied. In arriving at the decision to deny the claim, the Board has considered the applicability of the benefit-of-the-doubt rule enunciated in 38 U.S.C.A. § 5107(b). However, as there is not an approximate balance of evidence, that rule is not applicable in this case. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).

VA Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 
38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Here, neither the Veteran nor her representative has alleged prejudice with respect to notice, as is required, and none is found by the Board. Indeed, the Veteran received VCAA notice in April 2011, prior to the initial adjudication of the issue on appeal. Therefore, additional notice is not required, and any defect in notice is not prejudicial. See Shinseki v. Sanders, 556 U.S. 396 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The RO has obtained the Veteran's service treatment records and VA and private outpatient treatment records. The Veteran has not identified any outstanding and available medical treatment records. 

In addition, the Board finds that the VA examination and medical opinion evidence as it pertains to service connection for the right wrist and back disabilities is adequate as it is predicated on a full reading of the service treatment records as well as the medical records contained in the Veteran's claims file. The examiner considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale for the opinions stated, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the right wrist and back issues on appeal has been met. 38 C.F.R. § 3.159(c)(4).

Therefore, VA has also fulfilled its duty to assist a veteran in the development of the claim. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

The issues on appeal were previously before the Board in April 2015 and November 2016, when they were remanded for additional development. In accordance with the remand instructions, a VA examination and opinion was obtained, VA treatment records were obtained, all available private treatment records were obtained, and a supplemental statement of the case was issued. Since the record reflects substantial compliance with the prior remand instructions, the Board may proceed with adjudication of the claim. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 


Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).




____________________________________________
B. T. KNOPE
Veterans Law Judge, Board of Veterans' Appeals

ATTORNEY FOR THE BOARD A.B., Counsel

Copy mailed to: Disabled American Veterans



Department of Veterans Affairs