Citation Nr: 1706025 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 10-22 138 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

Entitlement to service connection for an acquired psychiatric disability, to include PTSD, due to the Veteran's second period of service.


REPRESENTATION

Appellant represented by: Harry Binder, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

P. Meehan, Associate Counsel


INTRODUCTION

The Veteran served between September 1988 and December 1991, and between April 1997 and March 1999. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 1997 and September 2009 rating decision of the New Orleans, Louisiana, Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge (VLJ) in March 2012. A transcript of that hearing is of record and associated with the claims folder.

In January 2013, the Board remanded the appeal for further development. Specifically, the Board sought medical records referenced in the Veteran's testimony during the March 2012 hearing.

In April 2015, the Board remanded the appeal a second time for VA medical records referenced in a February 1999 service treatment record (STR), and then for any additional evidence deemed necessary in light of such development. It has once again been returned to the Board for appellate review.

The Board acknowledges that the Veteran alleges that he has a psychiatric disorder related to service, and that this is similar to claim related to his first period of service that was denied in January 1997 and became final. However, in view of the fact that the agency of original jurisdiction (AOJ) and the Board have developed this claim over the years of its pendency before the department as a service connection claim without regard to whether new and material evidence had been received, and the Veteran has relied upon this procedural posture over that time, the claim is considered properly reopened under 38 U.S.C.A. § 5108 and 38 C.F.R. § 3.156(a). 


REMAND

For the reasons set forth below, the issue of entitlement to service connection for an acquired psychiatric disability, to include PTSD, is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ. The Board regrets the additional delay caused by this remand. However, in order for the Board to make a full and fair decision for the issue on the appeal, additional development is necessary for the reasons described below. 

The Veteran asserts that he suffers from an acquired psychiatric disability, to include PTSD. The Veteran claims, in part, that he sustained traumatic emotional events during service that have resulted in a current mental disorder. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1101, 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Congenital or developmental defects are not considered to be diseases or injuries within the meaning of applicable law providing VA disability compensation benefits. 38 C.F.R. § 3.303(c).

Under ordinary circumstances for veterans of active service, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111. Only such conditions as are recorded in examination reports are to be considered as noted. The burden falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. 38 U.S.C.A. § 1153; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004).

Personality disorders are considered congenital or developmental defects and not diseases or injuries within the meaning of applicable legislation and, therefore do not constitute disabilities for VA compensation purposes. See 38 C.F.R. §§ 3.303(c), 4.9. Service connection, however, can be granted for additional disability resulting from a mental disorder that is superimposed upon the personality disorder. 38 C.F.R. §§ 3.303(c), 4.9, 4.127; see also VAOPGCPREC 82- 90, 55 Fed Reg. 45,711 (July 18, 1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993).

Service connection for PTSD requires: (1) a diagnosis of the disorder made in accordance with the criteria of Diagnostic and Statistical Manual of Mental Disorders (DSM-5); (2) credible supporting evidence that the claimed in-service stressor occurred; and (3) a link established by medical evidence, between current symptoms and an in-service stressor. 38 C.F.R. §§ 3.304(f), 4.125(a). The Board notes that regulations rating psychiatric disorders were recently amended to replace references from DSM-IV to DSM-5 and update the nomenclature used to refer to certain psychiatric conditions. These changes do not apply to claims pending before the Board on August 4, 2014, as this appeal was. See 79 Fed. Reg. 45093 (August 4, 2014). 

There are special considerations for PTSD claims predicated on a personal assault. The pertinent regulation, 38 C.F.R. § 3.304 (f)(5), provides that PTSD based on a personal assault in service permits evidence from sources other than a veteran's service records which may corroborate his or her account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304 (f)(5). VBA's Adjudication Procedure Manual, M21-1MR, also identifies alternative sources for developing evidence of personal assault, including private medical records, civilian police reports, reports from crisis intervention centers, testimonial statements from confidants such as family members, roommates, fellow service members, or clergy, and personal diaries or journals. M21-1MR, Part IV, Subpart ii, 1.D.17.n. 

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance, substance abuse, episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5). 

The Veteran filed for VA benefits in July 1994, claiming service connection for fatigue, sleeplessness, pain in joints, and memory loss due to his first period of service. During a July 1994 VA treatment session, the Veteran's wife described changes she saw in her husband when he returned from service, including memory loss, frustration and anger, falling asleep at random, and barking like a dog. Service treatment records from his first period of service between 1988 and 1991 were silent as to mental health symptoms or treatment. 

In September 1994, between the Veteran's first and second periods of service, the Veteran underwent a VA mental health examination and was diagnosed with depressive disorder, not otherwise specified (NOS) with mild emotional impairment, and a good prognosis. The physician recommended that perhaps the Veteran would benefit from psychiatric treatment. Additionally, a September 1994 VA problems list noted the Veteran had a psychotic disorder, NOS. 

The Veteran entered his second period of service in April 1997. In March 1997, just prior to entering service, a medical examination was conducted and the Veteran was found to be psychiatrically normal. On a report of medical history also in March 1997, he reported that he was in "good health," had no history of depression or excessive worry, and no history of nervous trouble of any sort. There was no mention of the Veteran's previous mental health diagnosis. As will be discussed below, it appears that the STRs for this period appear to be missing an evaluation of the Veteran at a mental health clinic at Fort McClellan, Alabama in February 1999.

In February 2005, VA treated the Veteran multiple times. During these treatments, he claimed depression, and had thoughts of violence and anger related to "combat experience," although the record does not indicate that he served in combat. A physician recommended Prozac treatment for depression, suggesting that it could be alcohol related; however, an addiction therapist shortly thereafter found that the Veteran did not meet the criteria for a substance abuse treatment program.

In March 2005, VA screened the Veteran for depression and PTSD. Both results were negative, although there was seemingly no consideration of the Veteran's documented mental health history.

VA performed a suicide risk assessment in May 2009 and the Veteran was not considered suicidal. A depressive disorder and treatment were acknowledged in the report.

In July 2009, VA made a formal finding of lack of information required to corroborate stressor(s) associated with service connection for PTSD. The formal finding listed the numerous attempts to gather information regarding the claim, and the Veteran's lack of response. The RO then denied the Veteran's claims for service connection for PTSD and a mental condition in September 2009, citing the lack of a PTSD diagnosis and absence of an in-service stressor. The RO acknowledged a previous diagnosis of depressive disorder, but found no evidence suggesting service connection.

The Veteran experienced multiple erratic episodes in August 2009 while seeking VA treatment. His behavior during these instances was described as "bizarre," "aggressive," "threatening," "homicidal," and "floridly psychotic." Witnesses noted that he appeared to exhibit homicidal fantasies and auditory hallucinations, and was "loudly barking" at VA medical staff. In November 2009, the Veteran again had another episode where he arrived at VA facility unannounced and proceeded to complain about his treatment. During the episode, the Veteran acted aggressively, barked, and eventually attacked police officers responding to the scene. It was decided that a full mental status examination was not possible due to the Veteran's "subsequent paranoid stance and failure to cooperate." The Veteran was hospitalized at a private hospital and diagnosed with an adjustment disorder along with PTSD; however, it is unclear as to the methodology and basis for the diagnosis. At a November 2009 follow-up visit for the incident, the VA examiner noted that the Veteran could not explain "reports of prior behavior, which appear to be selectively controlled by the patient [and is possibly] attention seeking behavior." Additionally, it was noted that the Veteran asserted that mental health treatment was unneeded and unwanted by him. 

The post-service treatment records include a December 23, 2009, clinical note which references and alleged incident in Panama and explained that the Veteran believed it had happened in 1989 or 1990 (during his first period of service).

In April 2010, new treatment records were obtained by VA that appeared relevant to the Veteran's initial period of service. These records included an undated letter to an unknown doctor written by the Veteran, describing his conditions and experiences in an effort to assist his physician in treatment. In the letter, the Veteran explains he had an encounter in Panama with a group of fellow soldiers who engaged in a racially motivated non-physical provocation against him. He writes that he told his First Sergeant, but nothing came of it. He insists that the incident has caused him "guilt," that he constantly relives the event, and suppresses the thoughts. The Veteran also claims that he was instructed by his supervisor to see a psychiatrist after the incident. 

In January 2011, a VA Licensed Practical Nurse (LPN) determined that the Veteran tested positive for a Primary Care PTSD (PC-PTSD) screen after asking the Veteran a short series of questions. 

In February 2011, a notation was made in the Veteran's VA treatment record that he had a medical history, "significant for depression with psychosis" with, "daily visual and auditory hallucinations."

In a VA treatment record dated April 2012, the examining physician reported the following encounter with the Veteran: "'I'm here because I'm trying to get disability.'" He reports that he heard that he could get benefits if he attends the PTSD program but when he was asked about PTSD symptoms, he endorsed no symptoms. He blames much of his past behavior on being ignored by the VA regarding what he believes is a legitimate claim for VA benefits. During the visit, he asked that I complete several documents regarding disability and then write a report endorsing the claim. He was focused on this issue alone but was redirected by me to that fact that this appointment was for treatment assessment only. He was not interested in use of medication."

The March 2012 Board hearing transcript reflects testimony of an event, but that the encounter took place in Saudi Arabia as opposed to Panama. The Veteran never actually identifies that this was the "stressor" that caused his PTSD, and there is neither a record of the incident itself, nor a psychiatric related visit during his first period of service.

In January 2013 the Board remanded for further development based on the Veteran's testimony. Upon further appellate review by the Board after return from remand, it was determined that a mental health record noted in the Veteran's service treatment record was missing from the claims folder. The description reported that the Veteran was evaluated at a mental health clinic at Fort McClellan, Alabama in February 1999. The Board remanded the appeal in April 2015 with instructions to obtain any associated mental health treatment records, and to readjudicate the claim in light of this evidence. The records were sought, but research resulted in "no listing."

Under the VCAA, VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service, and the record does not contain sufficient information to make a decision on the merits of the claim. 38 U.S.C.A. § 5103A (d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The evidence of a link between current disability and service must be competent. Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003). Here, the missing February 1999 treatment records indicate a possible relationship with service. In this regard, the Board is mindful that, in a case such as this, where some service treatment records are unavailable, there is a heightened obligation to explain our findings and conclusions and to consider carefully the benefit-of-the-doubt rule. Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). In conjunction with these circumstances, the Veteran's behavior and voluminous medical record suggest a current psychiatric disability; however, there are multiple occurrences of inconsistent references to medical conditions. Therefore, additional development of the medical evidence, in the form of an examination and opinion, is necessary for a proper adjudication of this claim. Accordingly, the case is REMANDED for the following action:

1. Obtain any additional relevant medical evidence that may have come into existence in the interim.

2. Afford the Veteran an opportunity to attend a VA comprehensive psychiatric examination to determine whether the Veteran has any acquired psychiatric disorders, and if so, whether any such disorder are etiologically related to any period of the Veteran's active duty service. The examiner should review the claims file, examine the Veteran, and the address the following: 

(a) Diagnose and identify any and all current psychiatric disorders;

(b) If any current psychiatric disorder is diagnosed, opine as to whether it is at least as likely as not (i.e., a 50 percent probability or more) that the depressive disorder NOS diagnosed in September 1994 represents: 
 (i) a chronic psychiatric disorder that has persisted since that time? Why or why not? 
 Or; 
 (ii) was it an acute and transitory mental condition that resolved prior to his entry into his second period of active duty service in April 1997? Why or why not?

 (A) If the answer to the above question (b)(i) is that the Veteran has had a chronic psychiatric disorder since at least September 1994, it is at least as likely as not that that such disorder was incurred in or as a result of his first period of active duty service from September 1988 to December 1991? Why or why not?

 (B) If the answer to the above question (A) is in the negative (i.e., that the chronic psychiatric disorder diagnosed in September 1994 was not incurred in or as a result of his first period of active duty service from September 1988 to December 1991), then is there clear and unmistakable evidence that the chronic psychiatric disorder that pre-existed his second period of active duty service from April 1997 to March 1999 was not aggravated (i.e., permanently worsened beyond its natural progression) therein? Why or why not? In answering this question, please reference the indication of mental health treatment he received in February 1999.

 C) If the answer to question (b)(ii) above is positive (i.e., the September 1994 diagnosis represents an acute and transitory mental condition that promptly resolved), is it at least as likely as not that any currently diagnosed acquired psychiatric disorder was incurred in or as a result of his second period of active duty service from April 1997 to March 1999? Why or why not? In answering this question, please reference the indication of mental health treatment he received in February 1999.

A complete rationale for all opinions must be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide complete explanations stating why this is so. In so doing, the examiner shall explain whether inability to provide a more definitive opinion is the result of a need for additional information, or whether he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

3. After completing the above and any other development deemed necessary, readjudicate the appeal. If the benefit sought remains denied, provide an additional supplemental statement of the case to the Veteran and his representative, and return the appeal to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).

Department of Veterans Affairs