﻿Citation Nr: AXXXXXXXX
Decision Date: 12/27/18 Archive Date: 12/27/18

DOCKET NO. 180822-131
DATE: December 27, 2018
ORDER
Readjudication of the claim for service connection for bilateral hearing loss is warranted.
Service connection for bilateral hearing loss is denied. 
An effective date of May 21, 2015, but no earlier, for the grant of service connection for posttraumatic stress disorder (PTSD) with major depressive disorder (MDD) is granted. 
The determination as to whether a December 1, 2016, Notice of Disagreement was timely submitted is dismissed as moot.
A 10 percent rating, but no higher, for residuals of a right calf muscle injury is granted.
A rating in excess of 10 percent for residuals of a right fibula fracture with an associated right ankle disability is denied. 
REMANDED
Entitlement to service connection for Factor V Leiden thrombophilia is remanded. 
Entitlement to service connection for gastrointestinal residuals associated with a Yersinia infection and intestinal hemorrhagic infarction is remanded. 
Entitlement to service connection for a neurological disorder of the extremities (claimed as peripheral neuropathy and myotonic muscular dystrophy) is remanded. 
Entitlement to service connection for a left shoulder disorder is remanded. 
Entitlement to an effective date prior to February 19, 2017, for the grant of a total disability rating based upon individual unemployability (TDIU), is remanded.
FINDINGS OF FACT
1. New evidence received after the August 2013 denial is relevant to the issue of entitlement to service connection for hearing loss.
2. The Veteran does not have a hearing loss disability for VA compensation purposes.
3. The earliest date of a claim subsequent to the August 2013 final rating decision that denied reopening the claim for service connection for PTSD was the Veteran’s May 21, 2015 claim to reopen the issue of service connection for PTSD, which is the appropriate effective date.
4. The grant of an effective date of May 21, 2015, for the grant of service connection for PTSD, renders moot the issue of whether a December 1, 2016 Notice of Disagreement was timely submitted.
5. The Veteran’s residuals of a right calf muscle injury are manifested by a history of right leg weakness, soreness, and increased pain during changes in weather, more nearly approximating a moderate Muscle Group XI injury.
6. The Veteran’s right ankle disability, status-post fibula fracture, does not more nearly approximate marked limitation of motion of the ankle joint. 
CONCLUSIONS OF LAW
1. The criteria for readjudicating the claim for service connection for bilateral hearing loss are met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).
2. The criteria to establish service connection for a bilateral hearing loss disability are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.385 (2017).
3. The criteria for an earlier effective date of May 21, 2015, for the grant of service connection for PTSD are met. 38 U.S.C. §§ 5107, 5110 (2012); 38 C.F.R. §§ 3.1 (p), 3.151, 3.155, 3.157, 3.400 (2017).
4. As the benefit sought on appeal has been granted, there remains no case or controversy as to the issue of whether a December 1, 2016 Notice of Disagreement was timely received. 38 U.S.C. § 7105 (d)(5) (2012); 38 C.F.R. § 20.101 (2017).
5. The criteria for a rating of 10 percent, but no higher, for residuals of a right calf muscle injury are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.56, 4.73, Diagnostic Code 5311 (2017).
6. The criteria for a rating in excess of 10 percent for residuals of a right fibula fracture with an associated ankle disability are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.71 (a), Diagnostic Code 5262-5271 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active service from January 2002 to November 2002, and from July 2004 to January 2007.
These matters come to the Board of Veterans’ Appeals (Board) on appeal from August 2018 and October 2018 rating decisions issued by the Department of Veterans Affairs (VA) regional office (RO).
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
The new and material evidence issue regarding bilateral hearing loss has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. In the August 2018 RAMP decision, the AOJ determined that new and relevant evidence was received to warrant readjudicating the claim for service connection for bilateral hearing loss. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. As such, the Board need not adjudicate the reopening of the claim again and may proceed to the merits of the service connection claim. 

Service Connection for Hearing Loss—Laws and Analysis
Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).
Impaired hearing is considered a disability for VA compensation purposes when the auditory threshold in any of the frequencies of 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 40 decibels or greater; the thresholds for at least three of these frequencies are 26 or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The Court has held that a veteran may establish the required nexus between current hearing loss disability and his term of military service if he can show by competent evidence that his hearing loss disability resulted from the in-service acoustic trauma even where the hearing loss disability does not arise in service. Godfrey v. Derwinski, 2 Vet. App. 352 (1992).
Upon review, the Board finds that the Veteran does not have a hearing loss disability for VA compensation purposes.
According to a December 2007 VA audiological examination report, puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear were 20, 15, 15, 20, and 20 respectively. In the left ear, puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz were 20, 20, 20, 25, and 20 respectively. Speech recognition for was 98 percent in the right ear and 96 percent in the left ear. The audiogram results shown above do not meet the definition of hearing loss as required by 38 C.F.R. § 3.385.
Further, VA and private treatment records do not show a hearing loss disability for VA compensation purposes. Although various VA examinations have been conducted in addition to the December 2007 examination, they relate to other disorders and not to the Veteran’s claimed hearing loss disability—they also do not contain audiological test results. The remaining evidence of record does not demonstrate a current bilateral hearing loss disability as required by 38 C.F.R. § 3.385.
The Court has held that “Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Because the evidence in this case does not show that the Veteran’s hearing loss is to a disabling degree as required under 38 C.F.R. § 3.385, the weight of the evidence demonstrates that the Veteran’s bilateral hearing loss has not met the threshold element of a current hearing loss “disability,” and the claim must be denied. Because the preponderance of the evidence is against the claim for service connection for bilateral hearing loss, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Earlier Effective Date Claim for PTSD
The Veteran is seeking an earlier effective date for the grant of service connection for his acquired psychiatric disorder, to include PTSD and MDD. The Veteran has also challenged the RO’s finding of that a notice of disagreement (NOD) in December 2016 was untimely. As will be determined below, the Board is granting an earlier effective date for the grant of service connection for PTSD, which renders moot the issue regarding the timeliness of the Veteran’s NOD.
The laws and regulations governing effective dates establish that unless specifically provided otherwise, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C. § 5110 (a).
The effective date of an award of disability compensation based on new and material evidence received after a final disallowance shall be the date of receipt of the new claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400 (q)(2).
A reopened claim is any application for a benefit received after final disallowance of an earlier claim. 38 C.F.R. § 3.160 (e).
The Veteran’s original claim for service connection for PTSD was denied in a June 2008 rating decision. The Veteran did not file a NOD, and the rating decision became final. See 38 U.S.C. § 7105. In May 2012, the Veteran filed a petition to reopen the claim for service connection for PTSD. In an August 2013 rating decision, the RO denied reopening the claim as new and material evidence had not been received. The Veteran again did not file a NOD, and the August 2013 rating decision became final. See 38 U.S.C. § 7105. 
In a subsequent September 2017 rating decision, the RO granted the Veteran’s service connection claim for an acquired psychiatric disorder, to include PTSD and MDD. An effective date of February 19, 2017, was assigned based on the submission of a VA Form 21-526b (Veteran’s Supplemental Claim for Compensation). 
The Board finds, however, that an effective date prior to February 19, 2017 is appropriate. The earliest date after the final August 2013 rating decision that the Veteran expressed intent to reopen his claim for service connection for PTSD is May 21, 2015. See May 2015 written statement from the Veteran’s representative (indicating that the Veteran was seeking service connection for PTSD and entitlement to a TDIU). In connection with the representative’s written statement, the Veteran filed a VA Form 21-8940 (Veteran’s Application for Increased Compensation Based on Unemployability). In his VA Form 21-8940, the Veteran specifically indicated that he was unemployed due to PTSD (a nonservice-connected disability at that time). Further, according to a July 2015 Report of General Information, VA contacted the Veteran to seek clarification regarding the Veteran’s claims. The Veteran again noted that he was seeking compensation for his PTSD disability. 
There is no evidence in the record showing that a claim, formal or informal, was filed prior to May 21, 2015. 
A claim is defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. §§ 3.1 (p) (2017). The Board notes that, effective March 24, 2015, VA amended its adjudication regulations to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary. See 79 Fed. Reg. 57,660 (Sept. 25, 2014). This rulemaking also eliminated the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims for increase and revised 38 C.F.R. § 3.400 (o)(2). These amendments are only applicable to claims and appeals filed on or after March 24, 2015, and are applicable in the present case. Id. at 57,686.
Here, the Veteran’s formal TDIU claim (submitted on a VA Form 21-8940) is a standard form as prescribed by the Secretary. Notably, the Veteran indicated that his claim for a TDIU was solely dependent on his PTSD disability (which had not yet been service connected); as such, the Board finds that the Veteran’s VA Form 21-8940 should have been construed as a claim to reopen service connection for PTSD. This is also appropriate given the Veteran’s clear intentions to reopen his claim for PTSD as evidenced by his representative’s May 2015 written statement and the July 2015 Report of General Information. Therefore, the Board finds that the Veteran submitted a formal claim to reopen service connection for PTSD on May 21, 2015.
Under the controlling law and regulations outlined above, the award of compensation based on a reopened claim may be no earlier than the date of receipt of the claim, or the date entitlement arose, whichever is the latter. 38 C.F.R. § 3.400 (q)(2), (r). Thus, the May 21, 2015 date is the appropriate effective date, because even if the date that the entitlement arose could be found to precede it, the later of the two dates controls. 38 C.F.R. § 3.400. Accordingly, the proper effective date for the grant of service connection for the Veteran’s acquired psychiatric disorder is May 21, 2015.
Regarding the timeliness of the Veteran’s December 2016 NOD, and as noted above, on May 21, 2015 the Veteran filed a claim for a TDIU in addition to requesting to reopen the claim for PTSD). In response to the May 2015 claim for a TDIU, a rating decision was issued in January 2016, which denied entitlement to a TDIU. On the Codesheet of the decision, the RO indicated that the Veteran had listed both service-connected disabilities and nonservice-connected disabilities as contributing to his inability to work. The RO noted that the Veteran did not file a prescribed form for the new claims or claims to reopen. For this reason, the RO indicated that only the TDIU was being adjudicated. The Veteran filed a NOD with the January 2016 rating decision expressing disagreement with the purported denial for service connection for PTSD. 
The Board finds that, given the grant of an effective date of May 21, 2015 for the grant of service connection for PTSD, the Veteran’s NOD as to the January 2016 rating decision is moot—as both outcomes would result in the same effective date, i.e., May 21, 2015 (the date of the Veteran’s formal claim for a TDIU). Accordingly, a determination as to whether the December 1, 2016 NOD was timely filed is moot. 
Laws and Analysis for Increased Rating Claims
Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4 (2017). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1 (2017). Where there is a question as to which of two disability ratings shall be applied, the higher rating is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. When, after careful consideration of the evidence, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.
Right Calf Muscle Injury Rating
The Veteran is in receipt of a noncompensable (0 percent) disability rating for the right calf muscle injury under 38 C.F.R. § 4.73, Diagnostic Code 5311 for slight impairment of Muscle Group XI. 
Diagnostic Code 5311 provides evaluations for disability of muscle group XI. This muscle group includes the posterior and lateral crural muscles and muscles of the calf, including the triceps surae (gastrocnemius and soleus), tibialis posterior, peroneus longus, peroneus brevis, flexor hallucis longus, flexor digitorum longus, popliteus, and plantaris. Muscle group XI is responsible for propulsion and plantar flexion of the foot, stabilization of the arch, flexion of the toes, and flexion of the knee. 38 C.F.R. § 4.73, Diagnostic Code 5311. Under Diagnostic Code 5311, a noncompensable evaluation is warranted for “slight” injury; a 10 percent rating is warranted for “moderate” injury; a 20 percent rating is warranted for “moderately severe” injury; and, a 30 percent rating is warranted for “severe” injury. Id.
For VA rating purposes, the cardinal signs and symptoms of muscle disability are loss of power, weakness, lowered threshold of fatigue, fatigue-pain, and impairment of coordination and uncertainty of movement. 38 C.F.R. § 4.56 (c).
The evidence of record includes a December 2015 VA muscle examination report. At that time, the Veteran was noted to have torn his right leg muscle in a motorcycle accident during service in 2005. During the evaluation, the Veteran reported right leg weakness and stated that he was unable to walk for more than 1 mile. He could only stand for about 15 minutes. His right leg pain and soreness was noted to worsen with weather changes. Upon examination, there was no leg weakness and the torn right leg muscle did not affect muscle strength in the right leg. The examiner noted that loss of function due to flare-ups could not be determined without resorting to mere speculation. 
The remaining evidence of record during the rating period on appeal does not address the severity of the Veteran’s right calf muscle disability. 
Based on the above, the Veteran’s right calf muscle injury has been manifested by a history of a torn right calf muscle, complaints of pain, weakness, and increased pain and soreness during flare-ups. The Veteran has also reported an inability to walk more than 1 mile, and limitation in standing up to 15 minutes. The Board finds that, when resolving reasonable doubt in the Veteran’s favor, his disability more nearly approximates a moderate Muscle Group XI injury pursuant to the criteria for a 10 percent disability rating under Diagnostic Code 5311. 38 C.F.R. §§ 4.3, 4.7, 4.73.
However, an even higher rating is not warranted as the manifestations of the Veteran’s muscle injury is not consistent with a moderately severe disability. The medical evidence of record does not show any loss of deep fascia, loss of muscle substance, or abnormal resistance of the muscles. Muscle strength testing has been normal without cardinal signs or symptoms of muscle disability. 
In sum, the Board awards a 10 percent rating, but no higher, for the Veteran’s residual muscle injury.
The Veteran has already been awarded a separate 10 percent rating for his painful right calf scar. He has not disagreed with this rating, and regardless, there is no evidence demonstrating manifestations consistent with a rating higher than 10 percent. 
Right Ankle 
The Veteran’s right ankle disability associated with a right fibula fracture is rated under Diagnostic Codes 5262-5271. See 38 C.F.R. § 4.71a. Hyphenated diagnostic codes may be used when a rating is determined on the basis of a residual condition. 38 C.F.R. § 4.27 (2017). Therefore, Diagnostic Codes 5262-5271 indicates residuals of impairment of the tibia and fibula (DC 5262) are rated under the diagnostic code for limitation of motion of the ankle (DC 5271).
Under Diagnostic Code 5262, a 10 percent disability rating is warranted when there is malunion of the tibia and fibula with slight knee or ankle disability; a 20 percent rating is warranted when there is malunion of the tibia and fibula with moderate knee or ankle disability; a 30 percent rating is warranted for malunion of the tibia and fibula with marked knee or ankle disability; and a maximum rating of 40 percent is warranted for nonunion of the tibia and fibula with loose motion, requiring brace. 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2017). 
The Veteran has not submitted and the evidence does not show that he has malunion of the tibia or fibula. As there is no medical evidence of nonunion or malunion of the tibia of fibula, a rating under Diagnostic Code 5262 is not for consideration.
Normal ankle motion is measured from 0 to 20 degrees of dorsiflexion and 0 to 45 degrees of plantar flexion. 38 C.F.R. § 4.71a, Plate II (2017).
Under Diagnostic Code 5271, a 10 percent rating contemplates moderate limitation of motion, and a 20 percent rating contemplates marked limitation of motion.
The words “moderate” and “marked” are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6 (2017).
The evidence includes a December 2007 VA examination where the Veteran reported that he turned his right ankle over easily and had pain all the time with walking. Physical examination found dorsiflexion to 20 degrees and plantar flexion at 45 degrees. Pain was noted to begin at the end-range of motion. No additional loss of motion was noted with repetition or flare-ups. No instability was noted. X-rays showed old trauma in the inferior aspect of the medial and lateral malleolus. Diagnosis was well-healed right fibula, status-post fracture. 
At a December 2015 VA examination, the Veteran reported pain in the area of the scar, but no ankle problems. Physical examination found dorsiflexion to 20 degrees and plantar flexion to 45 degrees. No pain was noted on examination and there was no evidence of pain with weight-bearing or evidence of localized tenderness or crepitus. There was no additional loss of motion with repetition or flare-ups. Muscle strength was normal and no instability or dislocation was found on examination. The right fibula and ankle had no functional impact.
A rating higher than 10 percent for right ankle disability is not warranted. The evidence of record demonstrates that, at the time of his injury to the right fibula in service, the fracture site was at the right ankle. The Veteran has been shown to have right ankle pain, but with full range of motion. There is no indication in the record of “marked” limitation of motion of the right ankle to warrant a 20 percent rating under Diagnostic Code 5271. 
Moreover, the 10 percent rating assigned under DC 5271 already contemplates the Veteran's functional impairment due to right ankle pain. Thus, a higher rating based on the DeLuca factors is not warranted. 38 C.F.R. §§ 4.40, 4.45 (2017); DeLuca v. Brown, 8 Vet. App. at 202 (1995).
Accordingly, the claim for a rating in excess of 10 percent for the right ankle disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the doubt doctrine; however, as the preponderance of the evidence is against assignment of a higher rating, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.
REASONS FOR REMAND
Factor V Leiden Thrombophilia
VA’s duty to assist requires it to provide a medical examination or obtain a medical opinion if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (A) contains competent evidence of a current disability; (B) establishes that the Veteran suffered and event, injury, or illness during active service; and (C) indicated that the claimed disability may be associated with the in-service event, injury, or illness or another service-connected disability. 38 C.F.R. § 3.159 (c)(4)(i) (2017).
The Board notes that congenital or developmental defects are not diseases or injuries within the meaning of the applicable legislation and are not subject to service connection. 38 C.F.R. §§ 3.303 (c), 4.9 (2017). Service connection is only possible if there is evidence of additional disability due to aggravation during service of the congenital defect by superimposed disease or injury. See Monroe v. Brown, 4 Vet. App. 513, 514- 15 (1993); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995).).
Post-service treatment records confirm a diagnosis of Factor V Leiden thrombophilia. However, the record is unclear whether it is a congenital disease or defect. A clarifying medical opinion is therefore necessary.
Gastrointestinal Disorder
In a June 2017 VA medical opinion, the examiner indicated that the Veteran’s current intestinal and gastrointestinal issues, including chronic diarrhea, status- post right hemicolectomy of pseudomembranous colitis, followed by small bowel resection for hemorrhagic gastritis, was incurred due to the condition discovered in 2010 (i.e. Yersinia infection of the gastrointestinal tract and intestinal hemorrhagic infarction). The examiner further opined that these conditions (Yersinia infection and intestinal hemorrhagic infarction) were “secondary to veteran’s genetic mutation blood disorder.” In other words, the Veteran’s gastrointestinal disorder has been associated to his Factor V Leiden thrombophilia. Therefore, the gastrointestinal disorder issue is intertwined with the Factor V Leiden thrombophilia issue, and as such, a remand is appropriate. 
Neurological Disorder and Left Shoulder Disorder
The Veteran seeks service connection for a disorder that is manifested by pain and weakness in his extremities. Although the Veteran originally filed claims for myotonic dystrophy (a genetic disorder that causes progressive muscle weakness) and peripheral neuropathy, he only appealed the claim for peripheral neuropathy. See August 2018 direct review statement. Nonetheless, the Board has recharacterized the issue as service connection for a neurological disorder of the extremities (claimed as peripheral neuropathy and myotonic dystrophy) to encompass all of the Veteran’s claimed symptoms. As a lay person, the Veteran is not expected to know or understand the exact nature of his disability beyond its symptoms and functional effects. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009).
VA treatment records include a December 2011 VA neurology consultation note, which indicates that the Veteran was being seen for consultation regarding a genetic evaluation for myotonic muscular. During the evaluation, the Veteran reported bilateral hand weakness. The VA physician noted that the Veteran had been deployed to Iraq for 9 months (From August 2004 to April 2005). The Veteran’s hand weakness was first observed about 4 months into his deployment when the Veteran was unable to grip and hold a chinning bar. It was noted that an EMG conducted in January 2010 suggested that the Veteran was suffering from myotonic dystrophy. 
According to August 2011 VA primary care notes, the Veteran had a right shoulder torn ligament “and now with increasing left shoulder pain.” At that time, the Veteran also stated that his weakness started in January 2005 when serving in Iraq. He noticed that he could not do a pull-up because his hands slipped off the bar. The weakness in his hands had progressively worsened and was now causing trouble with simple things that required gripping. 
Other VA treatment records note a possible diagnosis of peripheral neuropathy, but no specific diagnosis. See e. g., June 2015 and July 2015 VA treatment records. 
Given the various suggested diagnoses pertaining to the Veteran’s symptoms of his extremities, and in light of the Veteran’s report of in-service bilateral hand weakness while deployed in 2004-2005, the Board finds that the RO, in consideration with VA’s duty to assist, should afford the Veteran a VA examination to assist in determining the nature and etiology of his disorder(s). 
As it pertains to the left shoulder, it is unclear whether the Veteran’s service-connected right shoulder disability has contributed to the left shoulder disorder. Further, given the Veteran’s reports of pain and weakness in the extremities, clarification is needed as to whether the Veteran has a separate and distinct left shoulder diagnosis.
Effective Date for the Award of a TDIU
The Veteran filed his initial claim for a TDIU on May 21, 2015. Thereafter, in a January 2016 rating decision, the RO reconsidered the ratings assigned for the Veteran’s service-connected disabilities and denied entitlement to a TDIU. In a December 2016 NOD, the Veteran disagreed with the ratings assigned for his service-connected disabilities. In February 2017, the Veteran’s representative filed a supplemental NOD and indicated that the issue of a TDIU should be reconsidered based on the Veteran’s outstanding increased rating claims. In the August 2018 RAMP decision, the RO granted a TDIU, effective February 19, 2017, based on the Veteran’s service-connected PTSD and right shoulder disabilities. The effective date of February 19, 2017 is consistent with the date the Veteran was granted service connection for PTSD. 
Although the Veteran’s December 2016 NOD did not specifically list the TDIU issue, a claim for a TDIU is part and parcel of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record, as is here. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). As such, the Board finds that consideration of a TDIU is appropriate for the rating period beginning May 21, 2015 (the date of the Veteran’s initial claim for a TDIU and the inferred claims for increased ratings). 
As decided herein, the effective date for the grant of service connection for PTSD has been awarded beginning May 21, 2015, the issue of an earlier effective date for the TDIU turns, in part, on the rating assigned for the PTSD disability for the period from May 21, 2015, to February 18, 2017. As such, the issue of entitlement to an earlier effective date for the grant of a TDIU is intertwined with the evaluation to be assigned by the RO for the PTSD disability prior to February 19, 2017, as these disabilities must be evaluated in combination. See 38 C.F.R. § 4.79; Harris v. Derwinski, 1 Vet. App. 180 (1991). 
The matters are REMANDED for the following actions:
1. Obtain a medical opinion regarding the Veteran’s currently diagnosed Factor V Leiden thrombophilia. 
The examiner is asked to address the following:
(a.) Is the Veteran’s Factor V Leiden thrombophilia a congenital “disease” or a congenital “defect”? To assist the examiner, the Board notes that, for VA adjudication purposes, “disease” generally refers to a condition considered capable of improving or deteriorating, whereas “defect” generally refers to a condition not considered capable of improving or deteriorating. 
(b.) If the Veteran’s Factor V Leiden thrombophilia is a congenital DEFECT, is it at least as likely as not (50 percent or greater probability) that the Veteran suffers from additional disability due to aggravation of the defect during service because of a superimposed disease or injury?
(c.) If the examiner concludes the Veteran’s Leiden Factor V is a congenital DISEASE, the examiner should then render an opinion as to whether the disease preexisted the Veteran’s military service. 
If a congenital disease preexisted the Veteran’s service, then the examiner should state whether it underwent a permanent increase in severity during his active service and whether any permanent increase was due to the natural progress of the condition. 
(d.) The examiner must provide a rationale for all opinions reached.
2. Schedule the Veteran for an appropriate VA examination to determine whether he is diagnosed with a disability manifested by pain and weakness in his extremities. The claims file must be provided to and be reviewed by the examiner in conjunction with the examination. The examination should include any testing necessary to determine whether a diagnosed disability is present.
The examiner is asked to respond to the following:
(a.) After performing any necessary testing, to include EMG/nerve conduction study/etc., list all current diagnoses pertaining ot the Veteran’s complaints of pain and weakness in his extremities. 
(b.) For each diagnosis, state whether it is at least as likely as not (50 percent or greater probability) that the diagnosed disorder is related to the Veteran’s active military service. **The examiner should consider the Veteran’s report of onset hand weakness while deployed in 2004-2005. 
(c.) If the Veteran’s myotonic muscular dystrophy is a congenital DEFECT, is it at least as likely as not (50 percent or greater probability) that the Veteran has additional disability due to aggravation of the defect during service because of a superimposed disease or injury?
(d.) If the examiner concludes the Veteran’s myotonic muscular dystrophy is a congenital DISEASE, the examiner should render an opinion as to whether the disease preexisted the Veteran’s military service. If a congenital disease preexisted the Veteran’s service, then the examiner should state whether it underwent a permanent increase in severity during his active service and whether any permanent increase was due to the natural progress of the condition. 
(e.) State whether the Veteran’s disorder(s) is at least as likely as not (50 percent or greater probability) caused or aggravated by a service-connected disability. 
(f.) The examiner must provide a rationale for all opinions reached.
3. Schedule the Veteran for a VA left shoulder examination. The claims file must be provided to and be reviewed by the examiner in conjunction with the examination. The examination should include any testing necessary to determine whether a diagnosed disability is present.
The examiner is asked to respond to the following:
(a.) After performing any necessary testing, list all current diagnoses pertaining to the Veteran’s left shoulder. 
(b.) For each diagnosis, state whether it is at least as likely as not (50 percent or greater probability) that the diagnosed left shoulder disorder is related to the Veteran’s active military service. 
(c.) If not directly related to service, state whether the Veteran’s left shoulder disorder (s) is at least as likely as not (50 percent or greater probability) caused or aggravated by a service-connected disability, to include the service-connected right shoulder disability. 
(d.) The examiner must provide a rationale for all opinions reached
4. Following the implementation of the Board’s decision herein, readjudicate the issue of entitlement to an effective date prior to February 19, 2017 for the award of a TDIU. 

 
S. B. MAYS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD R. Casadei, Counsel