﻿Citation Nr: AXXXXXXXX
Decision Date: 02/22/19 Archive Date: 02/21/19

DOCKET NO. 181106-1218
DATE: February 22, 2019

ORDER

Service connection for psychiatric disability, claimed as post-traumatic stress disorder PTSD, is denied.

An effective date prior to October 18, 2016, for the grant of service connection for left knee instability is denied.

A rating higher than 10 percent for right thumb degenerative arthritis is denied.

.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that an acquired psychiatric disorder had its onset during active service or is otherwise etiologically related to service; credible supporting evidence of an in-service stressor(s) underlying the diagnosis of PTSD has not been presented; and psychosis was not manifested in service or to a compensable degree within the initial post separation year.

2. VA received a claim of entitlement to an increased rating for the Veteran’s left knee disability on September 13, 2016; prior to October 18, 2016 (date of examination), it is not factually ascertainable that the Veteran’s left knee disability manifested with instability.

3. During the appeal period, the Veteran’s right thumb degenerative arthritis has not been more nearly manifested by a gap of more than 2 inches between the thumb pad and the fingers, with the thumb attempting to oppose the fingers.

CONCLUSIONS OF LAW

1. The criteria for service connection for psychiatric disability to include PTSD and schizoaffective disorder are not met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303, 3.304(f), 3.307, 3.309.

2. The criteria for an effective date earlier than October 18, 2016, for the grant of service connection for left knee instability are not met. 38 U.S.C. §§ 5101, 5107, 5110, 5111; 38 C.F.R. § 3.400.

3. The criteria for a rating higher than 10 percent for right thumb degenerative arthritis are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.71a, Diagnostic Codes 5228.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from September 1985 to May 1992, including service in Southwest Asia. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form on May 3, 2018. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date of the election. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. See Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2(w)(1), 131 Stat. 1105, 1114 (2017). The Veteran may file a Supplemental Claim and submit or identify this evidence. See § 2(i)(1), 131 Stat. at 1109. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection

Service connection may be granted for any disease diagnosed after discharge, when the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Establishing service connection generally requires (1) evidence of a current disability; (2) evidence of in- service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a), (d).

Certain chronic diseases will be presumed related to service if they were shown as chronic (reliably diagnosed) in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service, with continuity of symptomatology since service that is attributable to the chronic disease. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303, 3.307, 3.309.

1. Service connection for an acquired psychiatric disability, claimed as PTSD.

The Veteran seeks service connection for an acquired psychiatric disorder claimed as PTSD. It is noted that the Veteran was not diagnosed with PTSD during any period of active duty and was not a prisoner of war. However, he has alleged that he has PTSD due to an in-service stressor that occurred while he was in combat in Iraq, Kuwait, and/or Saudi Arabia. 38 C.F.R. § 3.304(f)(1) -(5).

The Board finds that the preponderance of the evidence is against finding an acquired psychiatric disorder, claimed as PTSD, had onset during active service or manifested within one year after service separation, or that it is etiologically related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a)-(b), (d), 3.304. Credible supporting evidence of an in-service stressor(s) underlying the diagnosis of PTSD has not been presented. To be clear, the Board is not addressing the validity of a diagnosis for PTSD; but rather the Board finds that the Veteran’s acquired psychiatric disability is not related to any period of active duty service.

Entitlement to service connection for PTSD requires: (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); (2) a link, established by medical evidence, between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f).

The record is silent for complaints of or treatment for psychiatric symptoms or disability for 19 years after service. The Veteran was diagnosed with schizoaffective disorder in May 2011 and PTSD in November 2011.

Service treatment records are silent regarding psychiatric symptoms. A separation examination is not of record. However, the Veteran endorsed “nervous trouble of any sort” characterized by episodic nervousness on a March 1993 report of medical history in the Reserves. A normal clinical examination is of record. Additionally, the September 1997 five-year medical examination and report of medical history documented no psychiatric symptoms.

The Veteran’s reported stressor(s) include: (1) Combat in Iraq during Desert Storm in 1990 to 1991; (2) Combat in Saudi Arabia between September 1989 to April 1990 where he recovered casualties and bagged dismembered bodies, was exposed to hostile fire, and saw his “many soldiers wounded or dead”; (3) Combat in Baghdad and Kuwait between November 1990 and May 1991where he saw burning bodies, had to bag dead bodies, and shot dogs he saw eating the dead, (4) Driving while the enemy shot at the tanks, hearing the bullets ricochet off the metal and having to dodge mortar craters in the ground. See CAPRI (January 2017); VA 21-0781 (February 2012); VA Examination (July 2012), Correspondence (August 2017).

Military personnel records show the Veteran left his assignment in Germany for temporary duty in Saudi Arabia from November 9, 1990 to May 23, 1991. The Defense Personnel Research Information Retrieval System (DPRIS) responded to the RO inquiry for records pertaining to stressors in 1990 and 1991 that there were no incidents in which the 502nd Military Intelligence Company personnel recovered casualties on the battlefield. However, the company was attached to the 2nd Armored Cavalry Regiment which engaged enemy forces and a casualty was recorded in a separate unit attached to the 502nd on February 27, 1991. See Identification Materials (March 2017).

VA treatment records dated April 2011 to February 2017 reflect that in April 2011 the Veteran had been diagnosed with “PTSD/depression” and noted “battle experience in Iraq.” The Board notes that the provider was not specially trained in mental health disorders and made no discussion of any in-service trauma or stressor event. A May 2011 VA treatment note reflects a history from the Veteran that “he was in combat …. [and] heard screaming and hollering, flashbacks from the war;” diagnoses were schizoaffective disorder, depressed and rule out major depressive disorder with psychosis and PTSD. A June 2011 treatment note diagnosed schizoaffective disorder depressed. A November 2011 treatment note diagnosed “PTSD comorbid with what is likely schizophrenia.” VA examinations diagnose personality disorder NOS and a history of schizoaffective disorder in July 2012 and schizoaffective disorder (per history), in remission in March 2018. Neither relates the Veteran’s disability to service.

Private medical opinions in January 2017, August 2017, and October 2017 diagnose PTSD based on the Veteran’s reported combat exposure between September 1989 and April 1990. See Medical Treatment Record (January 2017), Correspondence (August 2017), Correspondence (October 2017). As noted above, the record shows that the Veteran was stationed in Germany until November 9, 1990. The Veteran’s flashbacks, hallucinations, and intrusive memories as described by his sister were noted in each report as well as her statements regarding inception, duration, severity, and frequency of symptoms. The Veteran reported that hearing gunshots in his neighborhood was common and provoked his reexperiencing symptoms.

The Board finds that the VA treatment records are not credible supporting evidence of a claimed in-service stressor as they reflect the history as reported by the Veteran. LeShore v. Brown, 8 Vet. App. 406 (1995) (A bare transcription of lay history is not transformed into competent medical evidence simply because it was transcribed by a medical professional, whether that professional is a VA or private physician.).

The Board has considered whether buddy statements from the Veteran’s sister constitute credible supporting evidence of continuity of symptoms from separation. However, based on a holistic review of the entire record to include Reserve examinations, the Veteran’s own statements and employment history, and the lack of reports of symptoms for almost two decades after separation, the Board finds that these buddy statements do not constitute “credible” supporting evidence. The Board finds the buddy statements not credible for the following reasons. First, the Veteran’s sister provides no approximate or specific dates of the Veteran’s alleged stressors, but rather provides a vague, generic restatement of the stressors reported to VA by the Veteran. Second, she does not report first hand observations of any of the alleged traumatic incidents. Third, the in-service and Reserve records do not include any history of the events cited by the Veteran as “traumatic” or “stressor” incidents. The medical evidence contemporaneous with separation is highly probative and, while it references “nervous trouble of any sort” on a March 1993 report of medical history, prior and later examinations make no reference to psychiatric problems. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant). Therefore, the Board finds that buddy statement is less persuasive and has less probative value in this matter.

The Board has further considered the VA treatment records and the private medical opinions, linking the Veteran’s PTSD to his history of in-service stressors. Because the question of whether the Veteran was exposed to a stressor in service is a factual one, VA adjudicators are not bound to accept uncorroborated accounts of stressors or medical opinions based upon such accounts. See Wood v. Derwinski, 1 Vet. App. 190 (1991); see also Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008) (finding the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion). In other words, whether a claimed stressor is of sufficient gravity to cause or support a diagnosis of PTSD is medical in nature; but, whether a claimed stressor actually occurred is a question of fact for adjudicators. Here, the Board finds that those medical opinions do not establish an in-service stressor because each is based entirely on history provided by the Veteran and/or his sister, which is otherwise not verified or corroborated and, in some instances, directly refuted by the Veteran’s service records. Also, the mere transcription of medical history does not transform that information into “credible supporting evidence.”

The record shows that VA has undertaken all reasonable efforts to corroborate through official sources the Veteran’s report of involvement in combat requiring the recovery of casualties on the battlefield in Iraq, Kuwait, and/or Saudi Arabia. However, no corroborating evidence was obtained. Though the record establishes that the larger unit to which the Veteran’s unit was attached engaged in combat, it does not establish that the Veteran himself engaged in combat in Saudi Arabia.

In view of the above, the Board concludes that credible supporting evidence of a stressor underlying the diagnosis of PTSD has not been presented. Therefore, the claim for PTSD is denied.

Additionally, the Board concludes that, while schizoaffective disorder has been diagnosed, the preponderance of the evidence is against finding that the Veteran has had this disorder in service or that it manifested within the applicable presumptive period or that it is otherwise related in-service injury or disease. A schizoaffective disorder is first documented in 2011, more than a decade after active service. 

In this case, the Veteran was released from active duty in May 1992 and his STRs are silent for psychiatric symptoms. VA received the Veteran’s original disability claim in July 1992; however, it did not mention disability due to psychiatric or mental disorders. See VA Form 21-526 (July 1992). In March 2011, almost two decades after his release from active service, VA received the Veteran’s claim for service connection for PTSD. See VA Form 21-526b (March 2011). Subsequently, the Veteran presented for VA medical treatment in April 2011, reporting recent depression, flashbacks, insomnia, rage, headaches, withdrawal, suspiciousness, and passing suicidal/homicidal ideation. See CAPRI (January 2017).

The available medical evidence reflects no indication schizophrenia began in service or is otherwise related to service. Schizophrenia is not shown in service or within the initial post separation year. It is first documented in 2011 and has not been linked to in-service disease or injury. The Board accepts that the Veteran is competent to report his symptoms and treatment. However, he is not competent to opine that “nervous trouble” endorsed within the first post-service year is a symptom of schizophrenia diagnosed almost two decades after service. The etiology of a psychological disorder is a complex medical question beyond the ken of a layperson. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Additionally, to the extent that the Veteran suggests that he has had a psychiatric disability since service, the Board finds that he is not credible given that he never mentioned psychiatric problems in his 1992 VA disability claim, coupled with the absence of any documented complaints or treatment intervening service and 2011. Therefore, the Veteran’s statements have diminished probative value.

The Board finds statements made to VA in connection with securing VA disability compensation are less probative than the medical evidence contemporaneous with service and the first documented findings and treatment for the claimed condition. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); see also Caluza v. Brown, 7 Vet. App. 498 (1995), aff’d, 78 F.3d 604 (Fed. Cir. 1996); White v. Illinois, 502 U.S. 346, 355-56 (1991); Rucker v. Brown, 10 Vet App. 67, 73 (1997). (The Board may consider a lack of contemporaneous medical evidence, interest or bias, whether the statements were made in furtherance of treatment, and the lapse of time in recollecting events attested to as factors in determining the credibility of lay evidence.)

Service connection cannot be granted for a personality disorder. 38 C.F.R. §§ 3.303(c), 4.9. 4.127 (2016); see also Winn v. Brown, 8 Vet. App. 510, 516 (1996), appeal dismissed, 110 F.3d 56 (Fed. Cir. 1997) (specifically holding that 38 C.F.R. § 3.303(c), as it pertains to personality disorder, is a valid exercise of the authority granted to the Secretary of Veterans Affairs); see also Beno v. Principi, 3 Vet. App. 439, 441 (1992). However, service connection may be granted, in limited circumstances, for disability due to aggravation of a constitutional or developmental abnormality (to include personality disorder), by superimposed disease or injury. See VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993); and VAOPGCPREC82-90. To the extent that the Veteran has a personality disorder, a personality disorder was not subjected to a superimposed disease in service. Therefore, service connection for personality disorder is not warranted.

On balance, the weight of the evidence is against the claim.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

2. Entitlement to an earlier effective date prior to October 18, 2016, for the grant of service connection for left knee instability

The Veteran seeks an effective date prior to October 18, 2016, for the assignment of the grant for service connection for left knee instability. He has provided no specific contentions in this matter or identified a date he believes to be correct.

The Board concludes that the preponderance of the evidence is against an effective date earlier than October 18, 2016 for the assignment of a separate rating for left knee instability because it is not factually ascertainable prior to this date that the Veteran met the criteria for a separate rating. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

Generally, the effective date is the date of receipt of the claim or the date entitlement arose, whichever is later, unless otherwise provided. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Entitlement arises on the date the claimant meets the basic eligibility criteria. For increased rating claims, if the increase occurred within one year prior to the claim, the increase is effective as of the date the increase was “factually ascertainable.” 38 C.F.R. § 3.400(o)(2); Harper v. Brown, 10 Vet. App. 125 (1997); VAOPGCPREC 12-98 (Sept. 23, 1998). If the increase occurred more than a year prior to the claim, the effective date shall be the date of the claim. 38 C.F.R. § 3.400(o)(2); Gaston v. Shinseki, 605 F.3d 979 (Fed. Cir. 2010). Finally, if the increase occurs after the claim is filed, the effective date shall be the date the increase occurred. 38 C.F.R. § 3.400(o)(2); Harper v. Brown, 10 Vet. App. 125, 126-27 (1997).

Generally, a specific claim in the form prescribed by VA must be filed in order for VA benefits to be paid. 38 U.S.C. § 5101 (a); 38 C.F.R. §§ 3.151, 3.160. A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5101 (a); 38 C.F.R. § 3.151 (a). The term “claim” or “application” means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p).

VA received a claim for an increased evaluation for left knee disability on September 13, 2016. A December 2017 Board decision granted service connection for left knee instability based on October 2016 VA examination findings that showed slight posterior and anterior instability in the left knee. There are no records dated in the year prior to the claim that show instability. Therefore, the assigned effective date is correct and there is no basis to assign an earlier effective date for the award.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

Increased Rating

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. A disability may require re-evaluation in accordance with changes in a veteran’s condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1.

3. Entitlement to a rating higher than 10 percent for right thumb degenerative arthritis

The Veteran seeks a higher rating for service-connected right thumb degenerative arthritis. No specific contentions have been advanced.

The Board concludes that the preponderance of the evidence is against an evaluation higher than 10 percent for right thumb degenerative arthritis. Right thumb degenerative arthritis is not more nearly manifested by a gap of more than 2 inches between the thumb pad and the fingers, with the thumb attempting to oppose the fingers; neither the lay nor the medical evidence more nearly reflects the criteria for a higher evaluation. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.71a, Diagnostic Codes 5228.

Diagnostic Code 5010 (traumatic arthritis) provides that arthritis substantiated by x-rays should be rated as degenerative arthritis under Diagnostic Code 5003. Diagnostic Code 5003 provides that degenerative arthritis is to be rated based on limitation of motion under the appropriate Diagnostic Code(s) for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010.

Diagnostic Codes 5224 through 5227 provide various ratings for ankylosis of individual digits. Ankylosis of the thumb, unfavorable (major or minor) warrants a maximum rating of 20 percent. 38 C.F.R. § 4.71a, Diagnostic Code 5254. Diagnostic Codes 5228 provide ratings where there is limitation of motion of the thumb. 38 C.F.R. § 4.71a, Diagnostic Code 5228. Under Diagnostic Code 5228, limitation of motion of thumb is assessed based on the gap between thumb pad and the fingers, with the thumb attempting to oppose the fingers. There is no distinction between the major and minor hands. 38 C.F.R. §4.71a, Diagnostic Code 5228.

In September 2016, VA received a claim for an increased rating for right thumb arthritis. VA treatment records in the preceding year lack evidence of treatment for right thumb arthritis. A January 2017 VA examination noted normal range of motion in the right thumb, no gap between the finger and proximal transverse crease, and no pain on examination. Pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over time. The Veteran reported increased frequency and intensity of subjective pain symptoms but denied flare-ups and functional loss. An April 2017 medical opinion stated, “it is not unusual for the physical exam of any particular joint to be normal (there to be full range of motion and no other clinical findings) if the arthritis is in the early or mild stages.”

A higher evaluation is not warranted as neither the lay nor the medical evidence shows limitation of motion of the right the thumb, or ankylosis of the thumb. See 38 C.F.R. §§ 4.71a, 4.73, Diagnostic Codes 5224, 5228.

Whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. The record lacks lay evidence in support of a higher rating in this case. Although the Veteran may believe he meets the criteria for a higher disability rating, the Board finds that his complaints along with the medical findings do not meet the schedular requirements for a higher evaluation, as explained above.

The Board has considered whether a higher or separate evaluation may be assigned under any other potentially applicable criteria. However, there is no other basis to award a separate or higher evaluation. The Board observes there is no nerve impairment associated with the disability to warrant a separate evaluation on this basis.

The Board accepts that the Veteran is competent to report his symptoms. However, whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. Both the lay and medical evidence are probative in this case. Although the Veteran may believe that he meets the criteria for the next higher disability rating, his complaints along with the medical findings do not meet the schedular requirements for a higher evaluation than now assigned, as explained and discussed above.

The Board finds that there is no basis to “stage” the rating as the evidence shows no distinct period where the disability exhibited symptoms that would warrant different ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (2001); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. §5107(b); 38 C.F.R. § 4.3.

 

C.A. SKOW

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. E., Associate Counsel